SS-II, LLC *v.* BRIDGE STREET ASSOCIATES
(SC 18271)

Rogers, C. J., and Katz, Palmer, Zarella and McLachlan, Js.

Argued March 18—officially released September 1, 2009

*John C. Matulis, Jr.*, for the appellant (plaintiff).

*John S. Bennet*, for the appellee (defendant).

*Opinion*

ZARELLA, J. The principal issue in this appeal[1] is whether the plaintiff, SS-II, LLC, is entitled to specific performance of an option to purchase property owned by the defendant, Bridge Street Associates, under the terms of a commercial lease agreement between the parties. The trial court rejected the plaintiff's claim seeking specific performance and rendered summary judgment in favor of the defendant, concluding that the option to purchase did not comply with General Statutes § 52-550 (statute of frauds),[2] the defendant was not estopped under the doctrine of equitable estoppel from asserting the statute of frauds as a defense, and the exception of part performance did not apply. On appeal to this court, the plaintiff argues that the trial court improperly rejected the principle that part performance may remove a contract from the statute of frauds, that the actions of the parties constituted part performance and that the defendant is barred under the doctrine of equitable estoppel from asserting a statute of frauds defense. The plaintiff also claims that, notwithstanding the statute of frauds, injustice can be avoided only by enforcement of the option to purchase. The defendant replies that part performance cannot be used to prove that an agreement existed between the parties because there never was a meeting of the minds regarding the purchase price of the property, an essen-

---

[1] The plaintiff appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 52-550 provides in relevant part: "(a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property . . . .

"(b) This section shall not apply to parol agreements for hiring or leasing real property, or any interest therein, for one year or less, in pursuance of which the leased premises have been or are actually occupied by the lessee, or any person claiming under him, during any part of the term."

tial term of a contract under the statute of frauds. We affirm the judgment of the trial court.

The following relevant facts are set forth in the trial court's memorandum of decision. "The parties entered into a commercial lease contract on March 6, 2003. The agreement contained in the lease was extended by the parties on December 23, 2004 . . . to March 31, 2013. Included in the lease was an option to purchase. On September 27, 2007, the plaintiff sent the defendant a notice to exercise the option. Included in [a] letter [accompanying the] notice of exercise of option is the following language: '[D]o you intend to make use of ELURs[3] as permitted in the lease? If so how many? The use of ELURs will affect the value of the property and require us to negotiate the final purchase price pursuant to [§ 13.A] of the lease.'

"Specifically, with [regard] to payment, the contract entered into by the parties [provides]: '13. Option to Purchase—Lessor [the defendant] grants an option to purchase the property to Lessee [the plaintiff], said option to be effective only during the original term of this lease, and provided that Lessee may not exercise such option until the beginning of the [thirty-sixth] month of this Lease, unless otherwise consented to by Lessor, upon the following terms and conditions: A. Purchase Price. The purchase price shall be [$1.2 million] for the premises less $20,000 for each year of the Lease term (or partial year on a pro-rated basis) which has expired, adjusted however, so as to increase the Option Price by an amount equal to [0.3 percent of $1.2 million] per month commencing on the thirty-seventh . . . month of the Lease term, and pro-rated for each

---

[3] Section 17.5.D.1 of the lease provides in relevant part: "Lessee [the plaintiff] agrees that the Lessor [the defendant] may utilize Environmental Land Use Restrictions ('ELURs') on the Property either during the term of the lease or after such time that Lessee exercises the option and purchases the Premises. . . ."

partial month, and further adjusted to take into account environmental conditions[4] existing at the leased premises, which adjustment shall be mutually determined by Lessor and Lessee. The entire purchase price shall be due at the time of closing scheduled in accordance with the terms herein, as adjusted in accordance with the custom of the Middlesex County Bar Association. The purchase price shall be paid by way of cash, certified check or bank check at closing.' . . .

"[T]he property to be purchased has substantial environmental contamination and has been under the supervision and review of the Connecticut department of environmental protection. After receiving notice of the plaintiff's intent to exercise the option to purchase, on October 3, 2007, the defendant, by counsel, advised the plaintiff that the defendant would not be closing on the property due to the language in the option contract, which indicates that the purchase price is to be determined at a later date based on environmental factors."

Shortly after the defendant notified the plaintiff that it did not wish to proceed with the closing, the plaintiff commenced this action seeking specific performance.[5] The defendant responded with a motion for summary judgment, arguing that the option to purchase failed to provide a definite purchase price for the property and

---

[4] Section 17.4.A of the lease provides in relevant part: "Subject to Lessee's obligations and duty to indemnify in [§] 17.4, herein, Lessor agrees to implement and complete any Remedial Actions that may be necessary to comply with the Environmental Laws, provided that Lessor's obligation to perform such Remedial Actions shall be limited to Pre-existing Environmental Conditions. In the event that the Lessee exercises its option and purchases the Premises, Lessor . . . shall assume all responsibilities for complying with the Transfer Act [General Statutes § 22a-134 et seq.] . . . . In the event that Lessee has created New Environmental Conditions, Lessee shall reimburse Lessor for the costs associated with investigating and remediating the New Environmental Conditions."

[5] The operative complaint is the amended complaint, which the plaintiff filed on January 18, 2008, and which added two paragraphs to the original complaint alleging part performance.

thus did not comply with the statute of frauds. The plaintiff objected, claiming that the defendant was estopped from invoking the statute of frauds as a defense because it had engaged in numerous acts constituting part performance. The defendant subsequently filed an answer and special defense, reasserting that the language of the option to purchase was not in compliance with the statute of frauds because it failed to include a definite purchase price and, therefore, was "unenforceable and void."

In its memorandum of decision, the trial court observed that, "[a]ccording to the plaintiff, the parties, since late March, 2007, had commenced a 'collaborative environmental investigation' of the premises in order to determine the environmental issues better, in contemplation of the [plaintiff's purchase of] the property.[6]

"Further, the plaintiff submitted the affidavit of [Gregory M.] Cook, a member of the plaintiff [company]. Specifically, Cook state[d] that, 'I told [Jonathan Sibley][7] that [the plaintiff] wanted to purchase the property pursuant to the option in . . . the lease . . . but had an incomplete understanding of the environmental issues as they then existed.' . . . Further, the affidavit states that '[i]t was also clear that this process [environmental collaboration between the parties] would put us both in a better position to make adjustments in the purchase price calculation, as contemplated in the Option to Purchase.' . . . By the plaintiff's own admission, the purchase price was not set by the parties and,

---

[6] In her affidavit in opposition of the defendant's motion for summary judgment, Lisa Wadge, the environmental engineer who managed the collaborative environmental investigation, attested that the defendant had paid $37,000 and the plaintiff had paid $67,000 in connection therewith. Wadge also attested that the results of the investigation would place the parties in a position to make adjustments to the purchase price as contemplated by the option to purchase language.

[7] Jonathan Sibley represented the defendant, the property owner of record, in the spring of 2007.

as the contract states, is to be determined by the parties at a later date. However . . . both parties were attempting to come up with a purchase price for the property prior to the filing of this action." The trial court determined that the option to purchase failed to set a definite price and, therefore, did not comply with the statute of frauds. The court also determined that part performance, if any, could not rescue the contract from this infirmity. The court thus concluded that there was no genuine issue of material fact and that the defendant was entitled to judgment as a matter of law. This appeal followed.

The plaintiff does not contest the trial court's conclusion that the option to purchase did not comply with the statute of frauds. Rather, the plaintiff claims that the trial court improperly concluded that part performance of a contract does not remove it from the statute of frauds, that the actions of the parties in the present case did not constitute part performance, and that the part performance of the option to purchase by the parties was insufficient to remove it from the statute of frauds. The defendant replies that the trial court properly rejected the plaintiff's claims because there never was a meeting of the minds between the parties on the purchase price, and, therefore, part performance could not cure this defect. We agree with the defendant.

We begin our analysis by setting forth the standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that

the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts. . . . Our review of the trial court's decision to grant the [defendant's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Allstate Life Ins. Co.* v. *BFA Ltd. Partnership*, 287 Conn. 307, 312, 948 A.2d 318 (2008).

The governing legal principles are well established. "The statute of frauds requires that the essential terms and not every term of a contract be set forth therein. *Scinto* v. *Clericuzio*, 1 Conn. App. 566, 568, 474 A.2d 102 (1984). The essential provisions of a contract are the purchase price, the parties, and the subject matter for sale. *Lynch* v. *Davis*, 181 Conn. 434, 438, 435 A.2d 977 (1980). In order to be in compliance with the statute of frauds, therefore, an agreement must state the contract with such certainty that its essentials can be known from the memorandum itself, without the aid of parol proof . . . . *Breen* v. *Phelps*, 186 Conn. 86, 92, 439 A.2d 1066 (1982). The statute of frauds is also satisfied [when] the contract or memorandum contains by reference some other writing or thing certain. *Robert Lawrence Associates, Inc.* v. *Del Vecchio*, 178 Conn. 1, 12–13, 420 A.2d 1142 (1979)." (Internal quotation marks omitted.) *Fruin* v. *Colonnade One at Old Greenwich Ltd. Partnership*, 38 Conn. App. 420, 426, 662 A.2d 129 (1995), aff'd, 237 Conn. 123, 676 A.2d 369 (1996).

We recently had occasion to clarify our jurisprudence regarding part performance and the doctrine of equitable estoppel in *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 873 A.2d 929 (2005), in which we stated that, "although this court on occasion has used the terms interchangeably, we never have intended that the doctrine of equitable estoppel and the doctrine of part performance operate as independent exceptions to the statute of frauds. . . . Rather, part performance is an

essential element of the estoppel exception to the statute of frauds. . . .

"Indeed, our review of cases since the [mid-1800s] reveals no instance in which this court has concluded that a party was estopped from asserting the statute of frauds without evidence of part performance. We recognize that some other jurisdictions apply the doctrine of equitable estoppel even in the absence of part performance or when evidence of part performance may be insufficient. . . . In our view, however, this approach is unwise when an independent cause of action or other remedial measures may be available to address such conduct . . . ." (Citations omitted.) Id., 63–65.

We further explained, with respect to the governing standards, that "[w]hen estoppel is applied to bar a party from asserting the statute of frauds . . . we . . . require that the party seeking to avoid the statute must demonstrate acts that constitute part performance of the contract. . . . Specifically, [t]he acts of part performance . . . must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or knowledge of the other party, and be such acts as alter the relations of the parties. . . . The acts also must be of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute. . . .

"Thus, in sum, the elements required for part performance are: (1) statements, acts or omissions that lead a party to act to his detriment in reliance on the contract; (2) knowledge or assent to the party's actions in reliance on the contract; and (3) acts that unmistakably point to the contract. . . . Under this test, two separate but

related criteria are met that warrant precluding a party from asserting the statute of frauds. . . . First, part performance satisfies the evidentiary function of the statute of frauds by providing proof of the contract itself. . . . Second, the inducement of reliance on the oral agreement implicates the equitable principle underlying estoppel because repudiation of the contract by the other party would amount to the perpetration of a fraud." (Citations omitted; internal quotation marks omitted.) Id., 60–63.

I

The plaintiff initially claims that the trial court improperly rejected the principle that part performance may remove a contract to convey real property from the statute of frauds. We disagree.

The trial court cited case law in its memorandum of decision expressly recognizing that acts of part performance by the party seeking to enforce a contract may take the contract out of the statute of frauds. E.g., id., 62–63; Breen v. Phelps, supra, 186 Conn. 94–95. The court subsequently concluded: "Inasmuch as the court finds that the contract is violative of the statute of frauds . . . and further finds that partial performance, if any, is incapable legally of rescuing it from this infirmity, the motion for summary judgment of the defendant . . . must be . . . granted." In using this language, the court did not disavow the principle that part performance may remove a contract from the statute of frauds but merely concluded that the doctrine was inapplicable in the present case. The court improperly suggested, however, that an agreement existed when it stated that "the contract" did not comply with the statute of frauds. In light of its prior finding that there was no contract to enforce because there had been no meeting of the minds on the purchase price, the court's statement was technically inaccurate. Never-

theless, this inaccuracy was insufficient to cast doubt on the court's clear conclusion, apparent from a reading of the entire memorandum of decision, that part performance could not provide a legal remedy for the lack of an agreement in the first instance. Accordingly, the plaintiff's claim has no merit.

## II

The plaintiff next claims that the actions of the parties constituted part performance that was sufficient to remove the option to purchase from the statute of frauds and to preclude the defendant from raising a statute of frauds defense. We disagree.

In resolving this issue, we turn for guidance to *Montanaro Bros. Builders, Inc.* v. *Snow*, 190 Conn. 481, 482, 487, 460 A.2d 1297 (1983) (*Montanaro*), and *H. Pearce Real Estate Co.* v. *Kaiser*, 176 Conn. 442, 443–45, 408 A.2d 230 (1979), in which the plaintiffs also sought enforcement of options to purchase real property and this court concluded that they could not recover under a theory of part performance. In *Montanaro*, the parties had executed a written agreement pursuant to which the plaintiffs would acquire the defendants' property for $450,000, subject to a price reduction under certain conditions. *Montanaro Bros. Builders, Inc.* v. *Snow*, supra, 483. The property was described as containing "approximately seventy-three . . . acres." Id., 484. Recognizing the absence of a recent land survey, the agreement required the plaintiffs, upon exercise of the option, to present the defendants with a survey and subdivision plan that would "delineate the seller's present [h]omestead and approximately six . . . acres, more or less, which the seller [would] retain as his own." (Internal quotation marks omitted.) Id.

Pursuant to the agreement, the plaintiffs paid the defendants $15,000 for the twelve month option and an additional $1000 for a two month extension. Id. The

plaintiffs provided the defendants with a preliminary boundary map but no subdivision plan. Id. After the defendants declined to execute the option, the plaintiffs commenced litigation. Id.

We agreed with the trial court that the option to purchase was unenforceable because of its imprecise description of the property to be retained by the sellers. Id., 485. We observed: "[T]he [trial] court expressly found that there was no way to ascertain the location of the defendant sellers' retained homestead and six acres. The court impliedly rejected the plaintiffs' claim that the parties intended to confer upon the plaintiffs the right to select the real estate to be excluded." Id., 486. We also determined that the plaintiffs were foreclosed from recovering under a theory of part performance because "the doctrine of part performance requires conduct that is referable to and consistent with [an] oral agreement between the parties. In the absence of an underlying agreement, there is no basis for finding that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement. . . . 1 Restatement (Second), Contracts § 129 (1981). The trial court's express finding, with respect to the retained acreage, that [t]he minds never met on which [six] acres were to be excluded from this sale is a factual finding negating the presence of either an oral or a written contract." (Internal quotation marks omitted.) *Montanaro Bros. Builders, Inc.* v. *Snow*, supra, 190 Conn. 487. We thus concluded that the defect in the option to purchase "precluded enforcement of the option agreement under any circumstances . . . ." Id.

Similarly, in *Kaiser*, the plaintiff real estate company alleged part performance of an oral agreement for the sale of real estate on the basis of a survey, specification,

plan of development and engineering services. *H. Pearce Real Estate Co.* v. *Kaiser*, supra, 176 Conn. 442, 444. We rejected the plaintiff's claim, however, because the terms of the letter describing the parties' understanding of the "consensus" that they had reached was "merely an expression of a preliminary or anticipatory act or acts on which to predicate a future contract."[8] (Internal quotation marks omitted.) Id., 444. Moreover, the letter stipulated that the plaintiff would pay the seller a $5000 deposit when the agreement was signed, but the plaintiff did not allege in its complaint that such a payment ever had been made. Id. Consequently, we concluded that the plaintiff had failed to allege the basic requirements of the doctrine of part performance. Id., 444–45.

In the present case, as in *Montanaro*, the trial court made a factual finding that the purchase price, an essential term of the agreement, had not been established by the parties but was to be determined at a later date. Although the option to purchase provides that the purchase price of the property shall be $1.2 million, subject to certain adjustments that are to be calculated by a formula pertaining to when the option is exercised, it also provides that the price will be "further adjusted to take into account environmental conditions existing at the leased premises, which adjustment *shall be mutually determined* by Lessor and Lessee." (Emphasis added.) Thus, the written option to purchase did not evince a meeting of the minds because the effect of the environmental conditions on the final purchase price of the property remained undetermined. Although § 17.4.A of the lease indicates how the price will be

---

[8] We noted that the letter was replete with language "indic[ative] of tentativeness," such as "we would offer," "we would purchase," "we would like," "[t]his is only a preliminary agreement subject to modification to accommodate our mutual interests," and "[t]he primary purpose is to come to a general agreement so that a contract can be prepared." (Internal quotation marks omitted.) *H. Pearce Real Estate Co.* v. *Kaiser*, supra, 176 Conn. 444.

adjusted to account for the parties' respective remediation obligations,[9] there is no formula or other directive indicating how the price will be affected by the defendant's utilization of environmental land use restrictions[10] under § 17.5.D.1 of the lease. Cf. *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 411–14, 973 A.2d 1229 (2009) (option to purchase real property definite and certain as to all essential terms, and, therefore, trial court improperly found defendant's exercise of option invalid).

As with the disputed provision in *Kaiser*, the option to purchase in the present case also expressly anticipates a *future* agreement between the parties with respect to the environmental land use restrictions. This is reflected not only in the language of the option to purchase but also in the plaintiff's letter accompanying the notice of its intent to exercise that option, in which the plaintiff asked the defendant if it intended to "make use of" any environmental land use restrictions and, if so, how many, because they might affect the subject property's value and require the parties to "negotiate the final purchase price pursuant to [§ 13.A] of the lease." A mere statement that the parties will mutually determine the future purchase price does not mean that the parties will, in fact, agree. Furthermore, there is no provision in the statute of frauds protecting the plaintiff in the event that the parties are unable to agree or the defen-

___

[9] Section 17.4.A of the lease provides that the defendant "agrees to implement and complete any Remedial Actions" required to comply with General Statutes § 22a-134 et seq. and that the plaintiff "shall reimburse" the defendant for costs associated with "investigating and remediating" any new environmental conditions that the plaintiff has created. See footnote 4 of this opinion. Thus, because these remediation obligations have been identified and may be calculated in accordance with a specific provision in the lease, there is no ambiguity regarding the effect that any remediation activities arising from the plaintiff's future use of the property would have on the ultimate purchase price.

[10] See footnote 3 of this opinion.

dant refuses to sell, a fact that the plaintiff acknowledged at the hearing on the defendant's summary judgment motion.[11] Accordingly, the option to purchase did not guarantee that the plaintiff would be able to purchase the property but simply constituted an agreement to agree. As a result, in the absence of a meeting of the minds, there can be no part performance that removes the option to purchase from the statute of frauds.

The plaintiff argues that the record is replete with evidence that the parties engaged in part performance of their obligations under the option to purchase and, therefore, that the defendant is estopped from raising the statute of frauds as a defense. The plaintiff specifically argues that the parties collectively contributed more than $100,000 to finance the " 'collaborative environmental investigation,' " which was intended to generate data that would assist in determining the ultimate purchase price of the property, and took many other actions in anticipation of the sale of the property. See

---

[11] When the court specifically asked the plaintiff's counsel this question at the hearing on the motion for summary judgment, the following colloquy ensued:

"The Court: There's no provision that says that this . . . one person cannot unreasonably withhold consent?

"[The Plaintiff's Counsel]: There's nothing of that sort in the document, Your Honor.

"The Court: But isn't that what we're talking about in a way?

"[The Plaintiff's Counsel]: What we're talking about is the—

"The Court: As to this particular term?

"[The Plaintiff's Counsel]: Right. And I'm looking at [it] very literally, Your Honor, because, I think, when people invoke statutes of frauds after doing all this time and effort . . . it says mutually determined. It didn't say mutually negotiated. It didn't say mutually discussed—

"The Court: But isn't it implicit—

"[The Plaintiff's Counsel]:—and they embarked on that.

"The Court: Isn't it implicit in your argument that you interpret, or your client interprets, this provision to say that the other party cannot unreasonably withhold consent in that determination?

\* \* \*

"[The Plaintiff's Counsel]: I think we believe that that is an obligation upon the defendant seller not to unreasonably withhold consent."

footnote 6 of this opinion. The plaintiff also contends that it relied to its detriment on statements and actions of the defendant indicating that it intended to comply with the option to purchase after the plaintiff informally indicated that it wished to exercise that option.

In light of our conclusion that there was no meeting of the minds regarding the purchase price of the property, we reject the plaintiff's claims that the contract should be enforced to avoid perpetration of a fraud under the theories of part performance[12] and equitable estoppel. Accordingly, we conclude that the trial court properly determined that the defendant was entitled to judgment as a matter of law.

### III

The plaintiff's final claim is that, due to the significant expenditure of time, effort and funds on the property in expectation that the parties would execute the option to purchase, injustice can be avoided only if it is enforced. The plaintiff raised this claim for the first time in its reply brief. "It is well established . . . that [c]laims . . . are unreviewable when raised for the first time in a reply brief. . . . Our practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Internal quotation marks omitted.) *State* v. *Johnson*, 289 Conn. 437, 462 n.27, 958 A.2d 713 (2008). Accordingly, we decline to review this claim.

---

[12] We therefore need not review the plaintiff's claim that the trial court improperly concluded that there was no genuine issue of material fact as to whether the parties' actions constituted part performance.

The judgment is affirmed.

In this opinion the other justices concurred.