RHONDA M. MARCHESI *v.* BOARD OF SELECTMEN
OF THE TOWN OF LYME ET AL.
(AC 29999)

Harper, Lavine and Mihalakos, Js.

Argued November 17, 2010—officially released August 30, 2011

*Kenneth M. McKeever*, town attorney, for the appellants (named defendant et al.).

*Harry B. Heller*, for the appellee (plaintiff).

HARPER, J. The defendants in this administrative appeal, the board of selectmen of the town of Lyme (board) and the town of Lyme (town),[1] appeal from the summary judgment rendered by the trial court in favor of the plaintiff, Rhonda M. Marchesi. The defendants claim that the court improperly (1) concluded that the parties were entitled to a trial de novo, (2) concluded that the board had exceeded its authority by determining that a highway existed on the plaintiff's property, (3) determined that there were no issues of material fact to preclude the granting of summary judgment and (4) made a finding of fact unsupported by the evidence.[2] We affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. Brockway Ferry Road[3] is a highway located near the shore of the Connecticut River in Lyme. The plaintiff owns real property, improved with a single family residence, on Brockway Ferry Road. In 2006, several other proprietors of real property abutting Brockway Ferry Road filed a petition, pursuant to General Statutes § 13a-39, requesting that the board define the boundaries of Brockway Ferry Road, particularly

---

[1] In addition to the board and the town, who are referred to collectively as "the defendants" in this opinion, where appropriate, the plaintiff named the Lyme Land Conservation Trust, Inc., and several of her adjoining property owners (Russell K. Shaffer; Leslie V. Shaffer; Curtis D. Deane; Richard W. Sutton; William Sutton, Jr.; Kenneth C. Hall; Brigit Ann Brodkin; Michael David Speirs; William A. Lieber; Carolyn D. Lieber; Ambrose C. Clark; Amy Day Kahn; Jane Dunn Wamester; Robert H. Sutton; Eleanor B. Sutton; John David Sutton; John David Sutton, Sr.; John David Sutton, Jr.; James A. Behrendt; Elizabeth Putnam; John J. Gorman III; David J. Frankel and Elizabeth C. Frankel) as defendants. These additional defendants are not parties to this appeal.

[2] Because we reject the claims raised by the defendants, we do not address the alternate grounds for affirmance raised by the plaintiff in her brief.

[3] The subject highway also is referred to as Brockway's Ferry Road throughout the record and the parties' briefs. In this opinion, we retain the trial court's designation of the highway.

at its western end, in the area of the plaintiff's property. The board considered documentary and testimonial evidence and held hearings related to the petition. In October, 2006, the board published notice of its memorandum of decision in which it "made a determination of the boundary and terminus of Brockway Ferry Road at its western end as it runs along and into the Connecticut River." Essentially, the board concluded that Brockway Ferry Road extended through and across the plaintiff's property, past the then existing western terminus of the highway.

Thereafter, the plaintiff brought an administrative appeal, pursuant to General Statutes § 13a-40, in the Superior Court. The plaintiff asserted that the board's decision introduced a public highway through and across her property, lessened the value of her property and negatively affected her use and enjoyment of her property. The plaintiff raised several claims related to the board's jurisdiction. Additionally, the plaintiff claimed that the board had acted illegally, arbitrarily and in abuse of its discretion. The gist of the complaint was that, rather than defining the width of an existing public highway, the board extended the length of said highway at its western terminus.

In June, 2007, the plaintiff moved for summary judgment. The defendants opposed the motion, arguing, in part, that the plaintiff was not entitled to move for summary judgment in an administrative appeal. In its May 20, 2008 memorandum of decision, the court granted the plaintiff's motion for summary judgment. The court concluded that it was entitled to consider the appeal in a trial de novo and, therefore, that the motion for summary judgment procedurally was appropriate. Thereafter, the court concluded that the plaintiff was entitled to judgment, as a matter of law, because the board exceeded the scope of its statutory authority

by determining the length of Brockway Ferry Road, rather than its width. This appeal followed.

I

First, the defendants claim that, in concluding that summary judgment procedurally was proper in this case, the court improperly determined that the parties were entitled to a trial de novo. We disagree.

The defendants argued before the trial court that the plaintiff was not entitled to a trial de novo but, rather, the court was limited to determining whether substantial evidence supported the board's decision. The court's determination rests, to a large extent, on its interpretation of § 13a-40. "[I]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *In re A.R.*, 123 Conn. App. 336, 339, 1 A.3d 1184 (2010).

Section 13a-40 provides in relevant part: "Any person aggrieved by [the decision of town selectmen in defining

highway bounds pursuant to § 13a-39] may appeal to the superior court for the judicial district where such highway is situated within ten days after notice of such decision has been given, which appeal shall be in writing, containing a brief statement of the facts and reasons of appeal . . . . Said court may review the doings of such selectmen, *examine the questions in issue by itself* or by a committee, confirm, change or set aside the doings of such selectmen, and make such orders in the premises, including orders as to costs, as it finds to be equitable. The clerk of said court shall cause a certified copy of the final decree of said court to be recorded in the records of the town in which such highway is located, and, if such decree changes the bounds defined and established by the decision of such selectmen, the bounds defined and established by such decree shall be the bounds of such highway." (Emphasis added.)

Nothing in the plain language of the statute governing an appeal from the decision of the board limits the authority of the Superior Court in its review of the board's determination. Rather, the language of the statute unambiguously states that the court, examining the issues by itself, may change or set aside the decision of the board and make such orders in the premises as it finds to be equitable. Unlike the defendants, we do not interpret the statute in such a manner that it precludes the court from conducting a trial de novo. Furthermore, the defendants have not presented this court with persuasive authority to the contrary. Subsequent to the filing of an administrative appeal in which the parties are entitled to a judgment de novo, the appeal shall "follow the same course of pleading as that followed in ordinary civil actions . . . ." Practice Book § 14-7 (d) (5). This course of pleading encompasses the motion for summary judgment. See Practice Book § 17-44.

## II

Second, the defendants claim that the court improperly concluded that the board had exceeded its authority by determining that a highway existed on the plaintiff's property. We disagree.

A determination of the board's authority requires that we interpret § 13a-39. In part I of this opinion, we set forth the principles guiding our review. Section 13a-39 provides in relevant part: "Whenever the boundaries of any highway have been lost or become uncertain, the selectmen of any town in which such highway is located, upon the written application of any of the proprietors of land adjoining such highway, may cause to be made a map of such highway, showing the fences and bounds as actually existing, and the bounds as claimed by adjoining proprietors, and shall also cause to be placed on such map such lines as in their jurisdiction coincide with the lines of the highway as originally laid down. . . . Such selectmen . . . upon reaching a decision, shall cause the same to be published . . . and a notice of the same to be sent to all known adjoining proprietors. Such decision shall specifically define the line of such highway and the bounds thereof and shall be recorded in the records of the town in which such highway is located, and the lines and bounds so defined and established shall be the bounds of such highway unless changed by the Superior Court upon appeal from such decision of the selectmen."

The defendants argue that the legislature conferred authority on the board to "determine the line of the highway and the bounds thereof which, by definition and common sense, include both the width and the length of Brockway Ferry Road." They argue that "§ 13a-39 sets forth the legislature's enumerated due process procedures for the public to know the width and length of all or a portion of a highway where the

lines and bounds have become lost or uncertain. It . . . requires the board to establish the lines of the highway and the bounds thereof, that is, its boundary, border or limits and the courses and distances to its terminus."

We begin our analysis with the text of the statute. It provides that proprietors of land adjoining a highway may apply to the board for a determination "[w]henever the boundaries of [the] highway have been lost or become uncertain . . . ." General Statutes § 13a-39. The statute confers the authority to define "the line of [a] highway and the bounds thereof . . . ." General Statutes § 13a-39. Although the legislature did not define the key terms in the statute, we may look to the ordinary usage of the language in affording it its plain meaning. See *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 200–201, 3 A.3d 56 (2010) (noting that words and phrases not defined in statutes should be construed according to their commonly approved usage and that it is appropriate to look to common understanding of terms as expressed in dictionary).

A "boundary" is defined as "something that indicates bounds or limits; a limiting or bounding line." Random House Webster's Unabridged Dictionary (2d Ed. 2001). A "line" is defined as "a limit defining one estate from another, the outline or boundary of a piece of real estate." Id. It is also defined as "[a] demarcation, border or limit." Black's Law Dictionary (6th Ed. 1990). A "bound" is defined as a "limit or boundary," "something that limits, confines or restrains" or "land within boundary lines." Random House Webster's Unabridged Dictionary, supra. A "bound" also is defined as something that "denotes a limit or boundary, or a line enclosing or marking off a tract of land." Black's Law Dictionary, supra.

All of these key terms, read in context, plainly convey that the board is authorized to define the geographical

limits of a highway when such limits have become lost or uncertain. There is nothing in the statutory language under review that suggests authority to declare that a highway exists where a highway, in any shape or form, does not currently exist. The statutory language is limited in its scope, it confers the authority to describe the extent of highway land and, consequently, its relationship to abutting land. To construe the statute as suggested by the defendants would contravene its plain meaning.

Our interpretation of § 13a-39 is bolstered by this court's interpretation of it in *Hamann* v. *Newtown*, 14 Conn. App. 521, 541 A.2d 899 (1988). In *Hamann*, this court concluded that § 13a-39 did not confer authority on the board of selectmen of the town of Newtown to determine the legal status of an existing highway but merely the boundaries of such highway. Id., 524. The court stated: "A statutory proceeding for the survey and platting of an existing road does not operate to establish the road. Its purpose is merely to ascertain the courses and distances of one claimed already to be established. It estops the public from claiming that the road runs on a line different from that of the survey." (Internal quotation marks omitted.) Id. Also, the court reasoned that "[t]he purpose of § 13a-39 is to settle the uncertain width of a highway for the benefit of adjoining property owners." Id.

For the foregoing reasons, we conclude that § 13a-39 did not confer authority to define a highway where one did not exist but merely the geographical limits of an existing highway. Accordingly, we agree with the court that the board acted in excess of its authority and reject the defendants' claim.

III

Third, the defendants claim that the court improperly determined that there were no issues of material fact

to preclude the granting of summary judgment in the plaintiff's favor. We disagree.

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Sherman* v. *Ronco*, 294 Conn. 548, 553–54, 985 A.2d 1042 (2010).

In their analysis of this issue, the defendants essentially reargue the merits of their first claim, that the court's role in reviewing the board's decision was limited to determining if the board's decision was supported by substantial evidence. We already have rejected that claim in part I of this opinion. The defendants state that the court could not substitute its discretion for that of the board. They argue that § 13a-40 does not "vest in the Superior Court the authority to find the lost or uncertain boundaries of a highway, which authority the legislature has vested in the board pursuant to § 13a-39." These arguments are confounding in light of the fact that the court's decision rested entirely on its legal determination that the board had exceeded its authority. The defendants have not attempted to

demonstrate that any disputed issues of fact existed, let alone that they were material to the court's legal determination that the plaintiff was entitled to judgment. Accordingly, we are not persuaded by this claim.

IV

Finally, the defendants claim that the court improperly made a finding of fact when it stated, in the fact section of its memorandum of decision, that the board "conclude[ed] that the road ran through and over [the] plaintiff's property, *cutting off [the] plaintiff's access to the Connecticut River.*" (Emphasis added.) The defendants argue: "The plaintiff made no claim, and there was no evidence from which . . . the trial court could conclude that the board's decision cut off her access to the Connecticut River. The lines and boundaries of Brockway Ferry Road as found run to and through the river. As an abutting property owner and member of the public at large, the plaintiff has, as a matter of law, both the private easement of access and the public easement of travel." The defendants invite us to conclude that the trial court's finding of fact concerning the plaintiff's access to the Connecticut River was clearly erroneous.

The claim suffers from two principal flaws. First, in reviewing a decision to grant summary judgment, this court does not review findings of fact. This is because the trial court is not called on to make any findings of fact in ruling on a motion for summary judgment. See *Sherman* v. *Ronco*, supra, 294 Conn. 553–54. We recognize that the court used the heading "facts" in its memorandum of decision in setting forth the factual and procedural history of the case, but we view the use of such terminology in light of the procedural posture of the case. From our review of the memorandum of decision and the record of the proceedings, it appears that the material facts on which the court based its

decision were not in dispute. Second, even were we to accept as true the defendants' argument that the issue of the plaintiff's access to the Connecticut River was a disputed issue of fact and that the court improperly had resolved the factual issue, there is no basis to conclude that the court's finding in this regard affected its decision. The court, in rendering summary judgment, did not rely on any finding concerning the plaintiff's access to the Connecticut River but, rather, on the undisputed fact that the board had defined the highway at issue beyond its existing western terminus, concluding that it ran "through and over the plaintiff's property." The defendants do not attempt to persuade us otherwise. Accordingly, the defendants have not demonstrated that reversible error exists with regard to this claim.

The judgment is affirmed.

In this opinion MIHALAKOS, J., concurred.

LAVINE, J., concurring in part and dissenting in part. I join in part I of the majority opinion but respectfully dissent as to the remainder of the opinion because I construe General Statutes § 13a-39, which permits the selectmen of a town to "define the line of such highway and the bounds thereof," to mean that the selectmen may determine *both* the width and the length of an existing highway, not just the width as the majority concludes. I therefore would reverse the judgment of the trial court.

I generally agree with the recitation of facts in the majority opinion. I believe the following procedural facts also are relevant. Certain proprietors of land adjoining Brockway Ferry Road sent the following request to the defendant board of selectmen of the town

of Lyme (selectmen) by letter dated January 30, 2006:[1] "We the undersigned proprietors of land adjoining Brockway's Ferry Road hereby formally request that the Selectmen of the Town of Lyme take the steps necessary to define the bounds of Brockway's Ferry Road and such other steps deemed necessary to remove any and all uncertainties regarding the road's location as required by Sec. 13a-39 of the Connecticut General Statutes. We are further requesting that detailed attention be given to the western end of our road as this is the portion of the highway that has been the subject of much dispute for the past several years."

Section 13a-39 provides in relevant part: "Whenever the boundaries of any highway have been lost or become uncertain, the selectmen of any town in which such highway is located, upon the written application of any of the proprietors of land adjoining such highway, may cause to be made a map of such highway . . . and shall also cause to be placed on such map such *lines* as in their judgment coincide with the *lines* of the highway as originally laid down. . . . Such selectmen . . . upon reaching a decision, shall cause the same to be published . . . . Such decision shall specifically define the *line* of such highway and the bounds thereof . . . and the *lines* and bounds so defined and established shall be the bounds of such highway unless changed by the Superior Court . . . ." (Emphasis added.)

I agree with the majority that the resolution of the defendants' appeal turns on the construction of § 13a-39 and whether the court properly granted the plaintiff's motion for summary judgment. The construction of a statute and the determination of whether the court properly granted a motion for summary judgment both

[1] The letter is signed by Curtis D. Deane, William A. Lieber, Carolyn D. Lieber, David Sutton, Barbara Bennett, Richard Sutton, Wendy Sutton, Jane Dunn Wamester, Cyrus Murphy, Bridgett Brodkin, Russell K. Shaffer, Leslie Shaffer, Eleanor Sutton and Robert H. Sutton.

raise questions of law and are therefore subject to plenary review. See respectively *Saunders* v. *Firtel*, 293 Conn. 515, 525, 978 A.2d 487 (2009), and *SS-II, LLC* v. *Bridge Street Associates*, 293 Conn. 287, 294, 977 A.2d 189 (2009). A motion for summary judgment shall be rendered if the moving party is entitled to judgment as a matter of law.[2] Practice Book § 17-49. In this instance the court granted the plaintiff's motion for summary judgment on the basis of its conclusion that § 13a-39 permits the selectmen to determine only the width of a highway. I disagree with that construction of the statute and, therefore, conclude that the court improperly granted the plaintiff's motion for summary judgment as a matter of law.

"Statutes must be interpreted to give meaning to their plain language and to provide a unified body of law." *U.S. Vision, Inc.* v. *Board of Examiners for Opticians*, 15 Conn. App. 205, 214, 545 A.2d 565 (1988). "[A] court cannot, by judicial construction, read into legislation provisions that clearly are not contained therein." (Internal quotation marks omitted.) *Genesky* v. *East Lyme*, 275 Conn. 246, 268, 881 A.2d 114 (2005).

Analysis of the words in the statute, as it relates to this case, makes two things immediately apparent: there is nothing whatsoever in the statute that confines selectmen to determining only the width of a highway. The word "width" does not even appear in the statute, nor does the word "length," for that matter. The "width" restriction was imported into the statute by this court in its decision in *Hamann* v. *Newtown*, 14 Conn. App. 521, 524, 541 A.2d 899 (1988), interpreting *Appeal of St. John's Church*, 83 Conn. 101, 105, 75 A. 89 (1910). As will be discussed, I believe that adherence to the restriction

---

[2] The plaintiff does not challenge the factual findings of the selectmen, only the authority they had to make the findings as to the boundaries of Brockway Ferry Road.

created in *Hamann*, in the context of this case, is not warranted.

Moreover, the statute requires selectmen to undertake their task in the context of making a map of the highway and placing on the map such "lines" as coincide with the original lines. It further requires the selectmen to "define the line of such highway and the bounds thereof" and provides that the "lines and bounds so defined and established shall be the bounds of such highway unless changed by the Superior Court . . . ." General Statutes § 13a-39. Nothing in this language suggests that the selectmen are to be limited to defining only a portion of a highway—e.g., the width—at the expense of defining the highway in its entirety as would be ordinarily understood and expected.

Research discloses that § 13a-39 is an old statute, having previously been codified as General Statutes (1902 Rev.) § 2083, and that it permits the selectmen of a town to determine the boundaries of a highway that have become lost or uncertain. *Appeal of St. John's Church*, supra, 83 Conn. 101, concerned the "original layout of Strait's Turnpike . . . by the General Assembly in November, 1796 . . . [which] provided for a road from the courthouse in New Haven to the courthouse in Litchfield, passing through the town of Watertown . . . ." Id., 102. "The 1796 layout was run by means of a compass, and was described by *courses and distances* having reference to certain monuments . . . . Prior to April, 1908, the actual boundaries had become lost or uncertain." (Emphasis added.) Id., 103. In 1908, "pursuant to the provisions of § 2083 . . . certain proprietors of land adjoining this highway applied to the selectmen of Watertown to [reestablish] the boundary lines of this highway." Id. "The line of the original 1796 survey was made on the east side of the highway. It is now impossible to locate that line by following the *courses and distances* given in the original report, because of the change in the magnetic north and the lack of original

monuments referred to in the survey. The width, general direction, and *length of courses* of the highway and ownership of adjoining property, as set forth in the survey of 1796, were the only portions of that survey which were or might be of assistance to the selectmen . . . ." (Emphasis added.) Id., 103–104.

Admittedly, the majority of the few reported cases decided under the statute generally concern requests by adjacent property owners that the selectmen determine whether the *boundary* of the highway encroaches on their properties.[3] The trial court noted this purpose when it quoted *Hamann* v. *Newtown*, supra, 14 Conn. App. 524, stating, "[t]he purpose of [§] 13a-39 is to settle the uncertain width of a highway for the benefit of adjoining property owners." That quote is accurate as far as it goes, but it must be understood in the context of that case, in which only the width of the highway was in dispute. Moreover, the language from *Hamann* is followed a citation to *Appeal of St. John's Church*. As previously noted, *Appeal of St. John's Church* addressed § 2083, now § 13a-39, in the context of the boundaries of a highway, noting that they encompass both its length and width—although neither the word "length" nor "width" are used—as the opinion mentions courses and distances, specifically. Moreover, a highway is not one dimensional in nature. After all, Strait's Turnpike ran from New Haven to Litchfield. See *Appeal of St. John's Church*, supra, 83 Conn. 102.[4]

---

[3] See *Hartford Trust Co.* v. *West Hartford*, 84 Conn. 646, 81 A. 244 (1911) (action to restrain town from taking strip of land for highway use); *Appeal of St. John's Church*, supra, 83 Conn. 103 (reestablishment of boundaries through Watertown); *Kent* v. *Pratt*, 73 Conn. 573, 48 A. 418 (1901).

[4] *Appeal of St. John's Church* also is significant because our Supreme Court concluded that "[i]t is evident that the purpose of these sections of the General Statutes is to furnish an easy and convenient method of defining bounds of highways which shall have been lost or become uncertain.

"[General Statutes (1902 Rev.) §] 2084 [now § 13a-40] indicates the method of taking an appeal from the decision of the selectmen to the Superior Court. This section makes provision for the review of the doings of the selectmen by the Superior Court, which is authorized to confirm, change, or set aside

As for the plaintiff's contention that the selectmen had no authority to determine the end point of Brockway Ferry Road, that contention is at odds with the facts of *Hamann* v. *Newtown*, supra, 14 Conn. App. 521. In that case, the Hamanns were owners "of land in Newtown which is crossed by a road known as Kale Davis." Id., 522. The Hamanns applied, pursuant to § 13a-39, "to the board [of selectmen of the town of Newtown] for a determination of the boundaries of Kale Davis [R]oad, which boundaries the [Hamanns] alleged had become lost or uncertain. Following a hearing, the board issued a resolution which established the boundaries to be as depicted on a certain survey map, and which concluded that the portion of Kale Davis [R]oad which crosses the [Hamanns'] property is a private road rather than a town highway." Id., 522–23. The Hamanns appealed to the trial court. The trial court concluded that the board lacked the authority to establish the legal status of a road. Id., 523. This court affirmed the judgment of the trial court. Id., 526. There was no claim in that case that the board lacked the authority to determine the length or direction of Kale Davis Road over the Hamanns' land, just whether it could determine its legal status under § 13a-39. I therefore conclude that the majority's reliance on *Hamann* for the proposition that § 13a-39 necessarily prevents selectmen from determining the length of a highway is mistaken.

This conclusion is further supported by the tenets of statutory construction that "[s]tatutes must be interpreted to give meaning to their plain language and to provide a *unified body of law*"; (emphasis added) *U.S. Vision, Inc.* v. *Board of Examiners for Opticians*, supra, 15 Conn. App. 214; and that we must "construe

the action of the selectmen. Apparently the remedy afforded by this statute is appropriate for the purposes of this case.

"The appellant's contention, that the purpose for which the application was brought could not be legally attained under § 2083, because the original bounds of this highway cannot be found or ascertained, is fully answered by the finding and judgment of the court." *Appeal of St. John's Church*, supra, 83 Conn. 106.

a statute in a manner that will not thwart its intended purpose . . . ." (Internal quotation marks omitted.) *Tayco Corp.* v. *Planning & Zoning Commission*, 294 Conn. 673, 686, 986 A.2d 290 (2010). Section 13a-39 falls within chapter 238 of our General Statutes, which is entitled "Highway Construction and Maintenance." General Statutes § 13a-41 also falls within that chapter.

Section 13a-41, entitled "Bounds of new highways to be marked and recorded," provides in relevant part: "Whenever a new highway has been laid out by authority of any town or city, such highway shall be marked or defined in the following manner: At the *beginning and termination* by stones, steel or iron bounds on each side, and a stone, steel or iron bound at each angle or deflection between the beginning and termination. . . ." (Emphasis added.) If the bounds in § 13a-41 include the beginning and termination of a highway, there is no reason to suppose that the lines and bounds mentioned in § 13a-39 do not also include the beginning and end. Moreover, as noted, § 13a-39 provides that "the selectmen of any town . . . may cause to be made a map of such highway . . . ." It stands to reason that a map of a highway within a town would include its entirety from beginning to end. "The obvious purpose of [§ 13a-39] was to afford proprietors the opportunity to see, from an inspection of the map, the relation the bounds claimed by the adjoining proprietors bore to the actual fences and bounds and the lines of the highway as originally laid out." *Hartford Trust Co.* v. *West Hartford*, 84 Conn. 646, 651, 81 A. 244 (1911).

This point addresses the allegation in the plaintiff's complaint that she did not petition the selectmen to determine the bounds of Brockway Ferry Road adjoining her property.[5] In their petition to the selectmen, the

---

[5] Despite her allegation that she did not petition the selectmen to determine the bounds of Brockway Ferry Road, the plaintiff also alleged that "[t]he . . . Town of Lyme Board of Selectmen, lacks jurisdiction to make a decision defining the bounds for Brockway Ferry Road . . . through and across the

defendant proprietors of adjoining land[6] claimed that the boundaries of the western terminus of Brockway Ferry Road had become lost or uncertain. If a highway is public, it is to be available to the public. No property owner should be permitted to ban the public, including neighbors, from traversing a public highway that crosses his or her land because he or she has not asked that the lost or uncertain boundaries be determined pursuant to § 13a-39.

For all the reasons stated, I conclude that the court improperly sustained the plaintiff's appeal.[7] I would

Plaintiff's property due to the fact that, in the public hearing held before the. . . Selectmen, the plaintiff . . . placed in issue (i) whether or not Brockway Ferry Road . . . ever extended through and across the Plaintiff's property and (ii) in the event that Brockway Ferry Road . . . ever did extend through and across the Plaintiff's property, whether or not it had been abandoned by a long period of nonuse. The resolution of the issue of the status of Brockway Ferry Road . . . as a municipal highway is a condition precedent to a definition of highway lines pursuant to . . . § 13a-39, and is beyond the jurisdiction of the . . . Selectmen."

Review of the record reveals that, pursuant to the research commissioned from Boundaries, LLC, by the selectmen, Brockway Ferry Road was created sometime between 1744 and 1784 by the town. A petition submitted by William Brockway and others stated in part, "the subscribers all of Lyme . . . are all dwelling in the North Society or Third Parish in said Lyme and near that ferry called Brockway Ferry and about three miles distant from said parish meeting house to which we cannot travel without trespassing on the enclosures of many of our neighbors for want of a highway from said meeting house to said ferry, which would be very convenient for us and absolutely necessary not only for your petitioners but for all travelers which use said ferry."

"The public use for the purpose of travel rarely corresponds precisely with the boundaries of highways as fixed by the record of their layout. The fact that the highway has not been occupied and worked to its whole width for a considerable period will not extinguish the rights of the public to the parcels not so occupied or worked. This road as an entirety had been laid out and opened, and has constantly been in use, for more than one hundred years, and it cannot be curtailed in its width by the encroachments of adjoining proprietors without unmistakable evidence of abandonment upon the part of the town." *Appeal of St. John's Church*, supra, 83 Conn. 105.

[6] See footnote 1 of the majority opinion.

[7] Because I conclude that the court improperly granted the plaintiff's motion for summary judgment, I do not address the defendants' third and fourth claims.

reverse the judgment of the trial court and remand the matter for further proceedings.