******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* BRIAN W.
PRUCKER ET AL.
(AC 38509)

Sheldon, Keller and Prescott, Js.

*Argued January 13—officially released April 25, 2017*

(Appeal from Superior Court, judicial district of
Hartford, Elgo, J.)

*Brian W. Prucker,* for the appellant (defendant American Legal Services, LLC).

*Gary G. Williams,* assistant attorney general, with
whom, on the brief, was *George Jepsen,* attorney general, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. This is an action brought by the state of Connecticut, pursuant to General Statutes §§ 17b-93 and 17b-94, to recover unreimbursed public assistance payments that it had made to Tammy Wright, whom the defendant American Legal Services, LLC,[1] successfully represented in a personal injury action arising out of a motor vehicle accident. The state alleges in its action that it was entitled to enforcement of its statutory lien on 50 percent of the net settlement proceeds retained by the defendant after it had settled Wright's personal injury claim against a third party.

The defendant appeals from the summary judgment of the trial court rendered in favor of the state, awarding it $250, plus interests and costs, from the net settlement proceeds that are subject to a statutory lien held by the state. The defendant claims that (1) summary judgment was improperly granted because the pleadings were not closed, (2) the court improperly determined that the state's action sounded in conversion, and (3) summary judgment was improperly granted because, among other things, there was a genuine issue of material fact as to the appropriate calculation of the net settlement proceeds. We affirm the judgment of the court.

Before turning to the specific claims of the defendant, it is helpful to review briefly the statutory scheme under which this case arises. Section 17b-93 (a) provides in relevant part: "If a beneficiary of [public assistance] . . . has or acquires property of any kind . . . the state of Connecticut shall have a claim . . . which shall have priority over all other unsecured claims and unrecorded encumbrances, against such beneficiary for the full amount paid . . . to the beneficiary or on the beneficiary's behalf under said [public assistance] programs . . . ." In order to effectuate this recovery, the legislature also adopted § 17b-94 (a), which provides in relevant part: "In the case of causes of action of beneficiaries [of public assistance] . . . the claim of the state shall be a lien against the proceeds therefrom in the amount of the assistance paid or fifty per cent of the proceeds received by such beneficiary . . . *after payment of all expenses connected with the cause of action*, whichever is less, for repayment under section 17b-93 . . . ." (Emphasis added.)

The record before the court, viewed in the light most favorable to the defendant as the nonmoving party, reveals the following facts and procedural history. On November 25, 2013, the defendant entered into a contingent fee agreement with Tammy Wright to represent her in an action for injuries she had sustained in a car accident (personal injury action) for which the other driver disputed liability. In April, 2014, Wright's vehicle was stolen. In order to purchase a replacement vehicle, she applied for and received a $500 loan[2] from Peachtree

Funding Northeast, LLC (Peachtree) against the value of the anticipated settlement of her personal injury action. As part of her agreement with Peachtree, Wright agreed to repay Peachtree $1000—the original $500 plus a purchase price of $500—upon the occurrence of the anticipated settlement.

On or about August 8, 2014, Wright settled her personal injury action against the other driver for $12,900. After deducting attorney's fees, outstanding medical bills, the $1000 repaid to Peachtree, and other costs, the defendant calculated Wright's total net proceeds from the settlement to be $5294.43.

On August 13, 2014, the state sent the defendant notice that it held a lien against 50 percent of any net settlement proceeds, pursuant to §§ 17b-93 and 17b-94, because Wright had received $10,318.60 of unreimbursed public assistance from the state. On August 15, 2014, in an effort to discharge the lien, the defendant sent to the state a "Statement of Account" alleging that Wright's net settlement proceeds were $5294.43, and remitted $2647.21 as 50 percent of the net settlement proceeds.

The state, however, in a written letter to the defendant, objected to that part of the accounting statement that treated the $1000 that was repaid to Peachtree as an expense connected with the litigation and thus was not included by the defendant as part of the net proceeds. In response to that objection, on September 17, 2014, the defendant sent the state a revised accounting statement that instead attributed an expense deduction of $500 payable to Peachtree, while reflecting Wright's net proceeds as $500 greater than in the previous statement. In accordance with the new accounting figures, the defendant remitted to the state a sum of $250, which constituted 50 percent of the $500 increase to the net proceeds.

In response, the state maintained that the remaining $500 expense deduction for the payment to Peachtree was not an expense connected with the personal injury action for which a deduction is permitted under § 17b-94 (a), and sought the remaining balance of 50 percent of $500, that is, $250. The state subsequently initiated this litigation against the defendant.

On April 28, 2015, the state filed a motion for summary judgment and memorandum in support in which it asserted, inter alia, that the loan from Peachtree and its corresponding cost is not an expense connected to the personal injury action because a loan is fundamentally different than an "expense," and the loan was to be used by Wright to buy a car for personal use, not to pay for litigation costs. The defendant opposed the state's motion for summary judgment, arguing, inter alia, that such loans, and the costs to obtain them, should be treated under the statute as an expense con-

nected to the action because they benefit the state as the lienholder in that they assist the individual receiving public assistance "to stay the course in order to maximize [his or her] recovery by settlement."

The court, *Elgo, J.*, heard oral argument on the motion on June 29, 2015. By memorandum of decision dated October 21, 2015, the court granted the state's motion for summary judgment because, as a matter of law, Wright's cost to obtain the loan was not for an expense connected with the personal injury action within the meaning of § 17b-94 (a) but, rather, was for the purchase of the upfront payment of $500 to be used to replace her stolen car. It, therefore, held that this $500 deduction in the defendant's accounting statement was improperly made. Subsequently, the defendant filed this appeal.

We begin by setting forth our applicable standard of review. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 115–16, 49 A.3d 951 (2012).

The defendant first claims on appeal that summary judgment was improperly granted because the pleadings were not closed. We disagree. There is no requirement in our rules of practice that the pleadings must be closed prior to adjudication of a motion for summary judgment unless the case has been scheduled for trial or there is a scheduling order. See Practice Book § 17-44; see also *Gordon* v. *Gordon*, 170 Conn. App. 713, 722-23,  A.3d  (2017); *Girard* v. *Weiss*, 43 Conn. App. 397, 416, 682 A.2d 1078 ("a motion for summary judgment can be made 'at any time,' without the necessity of closing the pleadings"), cert. denied, 239 Conn. 946, 686 A.2d 121 (1996). In the present case, at the time the court rendered summary judgment, a trial had not been scheduled, nor was there a scheduling order

in place. Accordingly, we reject this claim.

The defendant next claims that the court improperly determined that the state's action sounded in conversion.[3] We summarily dispose of this claim on the ground that it is irrelevant whether the court properly characterized the state's complaint as sounding in conversion. The state's authority to seek reimbursement for public assistance and enforce its lien is plainly authorized by the statutory scheme. In other words, the state's claim is sui generis and its viability is not dependent upon the elements of a common-law conversion claim. The state was clearly entitled to enforce its statutory lien on the settlement proceeds against the defendant who, at the time of receiving notice of the lien, possessed the funds. Accordingly, the defendant cannot prevail on this claim.

With regard to its remaining claim, the defendant argues that the parties dispute factually whether the loan was for $1000 or whether it was for $500 and whether the $500 cost to obtain the loan should be considered as an "[expense] connected with the . . . [personal injury] action" pursuant to § 17b-94 (a). We disagree that the amount of the loan was factually in dispute and conclude that the defendant has failed to brief adequately its claim that the $500 cost to obtain the loan should be considered as an expense connected with Wright's personal injury action.

Although the defendant bases its characterization of the state's position that the loan was for $1000 on a single allegation contained in its complaint,[4] the state contests the notion that it ever disagreed with the defendant as to the amount of the loan, stating in its brief that "[t]he [state] accepted, and accepts, as did the Superior Court . . . the figures set forth by the Defendant in its two Settlement Statements . . . and the Defendant's responses to the [state's] interrogatories nos. 1 and 4 . . . : that $500 was borrowed by [Wright] from Peachtree; that $1000 was ultimately paid to Peachtree out of the settlement proceeds in repayment of said [loan]; and that two remittances were made to the [state's] Department of Administrative Services on its statutory lien, the second of which included a $250 reimbursement associated with the Peachtree loan." Upon our review of the record, we agree with the state that there is no dispute between the parties as to the amount of the loan: both maintain Wright received $500 from Peachtree.

More importantly, however, the distinction between labelling the funds a $1000 loan and labelling it a $500 loan that carries a $500 "deduction" cost, as the defendant does, does not equate to a dispute regarding a *material* fact because it is not "a fact which will make a difference in the result of the case." *DiPietro* v. *Farmington Sports Arena, LLC*, supra, 306 Conn. 116. It ultimately does not matter what label is assigned to the

$1000 paid to Peachtree because the trial court decided, *as a matter of law*, that the cost of obtaining the loan is not an "[expense] connected with the . . . [personal injury] action" within the meaning of the lien statute, § 17b-94 (a). Accordingly, the court reasoned, the defendant improperly deducted the $500 cost of obtaining the loan before calculating the net proceeds of the settlement.

Because the *entire* $1000 repayment to Peachtree should have been included in the net settlement proceeds, not just the $500 loan itself, the court found that the defendant's net figure was short by $500, and because the state was entitled to 50 percent of that additional $500 under the lien provisions of § 17b-94 (a), the court awarded the state the $250 it sought from the defendant. For these reasons, we conclude that the financial calculations under the lien statute, and, thus, the end result of the case here, would have been the same, no matter if the funding from Peachtree was referred to as "a $1000 loan" or "a $500 loan with a $500 cost." Therefore, there was no genuine issue of material fact that precluded the court from entering summary judgment.

Significantly, we note that the defendant dedicates merely one sentence in its brief to challenging the court's conclusion that, as a matter of law, the cost to obtain the loan was not an expense connected to the personal injury action within the meaning of § 17b-94 (a).[5] That single assertion appears midway through the defendant's conclusion, wherein it baldly states for the first time that "[t]he underlying question is whether the *cost* of [a loan] is a cost of litigation." (Emphasis in original.) The defendant provides no analysis of that fundamental question in its brief. More specifically, it fails to cite to any cases in support of this claim or to engage in any statutory analysis of the phrase "expenses connected with the cause of action" in order to divine the legislative intent behind § 17b-94 (a). In fact, the defendant does not even repeat the contention that it made before the trial court with regard to this claim, i.e., that the cost of the loan should be treated as a cost connected to the personal injury action because it allowed Wright to continue her litigation to its maximum potential, thereby increasing the chances that the state, in turn, would be able to recover more money from Wright.

In sum, the defendant's brief contains only five pages of analysis that it devotes to other issues, and this court has long held that "[w]here the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 133, 101 A.3d 279, cert. denied, 315 Conn. 901, 104 A.3d 107 (2014). Accordingly, we do not consider the merits of this question.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The action also was originally commenced against Brian W. Prucker individually, but was later withdrawn as to him. Hereafter, references to the defendant are to American Legal Services, LLC.

[2] Although the parties use both the term "advance" and the term "loan" in describing the funds paid by Peachtree, we conclude that it is more accurate to refer to the funds as a "loan."

[3] In briefing this claim, the defendant also argues, without any supporting analysis, that a genuine issue of material fact exists as to whether the state adequately complied with § 17b-94 (a) by presenting an executed assignment from Wright to the defendant. Because it is inadequately briefed; see *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 133, 101 A.3d 279, cert. denied, 315 Conn. 901, 104 A.3d 107 (2014); we decline to address this argument.

[4] As support for its assertion that the state claims that the loan was for $1000, the defendant points to paragraph seven of the state's complaint, which alleges that the defendant's accounting statement "contained an improper deduction to [Peachtree] in the amount of $500, which deduction was not for an expense connected with the . . . [personal injury] action but was, upon information and belief, *a repayment of [a loan]* made by [Peachtree] to [Wright]." (Emphasis added.) The defendant then states in its brief "[a]t the 50% . . . reimbursement pursuant to . . . § 17b-94 (a) rate, the [loan] [according to the state] would be $1000 . . . ."

[5] We note that, in its reply brief, the defendant raises, for the first time, the claim that summary judgment was improperly granted because there was a genuine issue of material fact as to how Wright actually utilized the loan from Peachtree. Specifically, the defendant argues in its reply brief that although the motivation for Wright obtaining the loan was to buy a vehicle to replace her stolen one, there was no evidence presented as to how it was actually used, and, thus, "testimony [was] required . . . to [show] whether the expense [was not] 'connected with the . . . [personal injury] action' pursuant to the statute. . . ." "It is well established . . . that [c]laims . . . are unreviewable when raised for the first time in a reply brief. . . . Our practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Internal quotation marks omitted.) *SS-II, LLC* v. *Bridge Street Associates*, 293 Conn. 287, 302, 977 A.2d 189 (2009). Accordingly, we decline to review the merits of this claim.