ROBINSON, J.
**618 *534 This case returns to us after the remand ordered in Marchesi v. Board of Selectmen , 309 Conn. 608, 72 A.3d 394 (2013), for a trial de novo to determine the length and width of a particular highway known as Brockway Ferry Road. The plaintiff, Rhonda M. Marchesi, appeals[1] from the judgment of the trial court dismissing her appeal, brought pursuant to General Statutes § 13a-40,[2] from the decision of the defendants, the town of Lyme (town) and its Board of Selectmen (board),[3] determining the lost or uncertain **619 boundaries of the westerly end of Brockway Ferry Road pursuant to General Statutes § 13a-39.[4] On appeal, the plaintiff *535 contends that (1) the board and the trial court lacked subject matter jurisdiction under §§ 13a-39 and 13a-40, respectively, because it had not been judicially established as a condition precedent that Brockway Ferry Road was in fact a public highway, and (2) there were numerous other defects in the prosecution of the underlying petition before the board. Turning to the merits, the plaintiff also claims that the trial court's finding with respect to the width of Brockway Ferry Road was clearly erroneous. We disagree with the plaintiff's claims and, accordingly, affirm the judgment of the trial court.
The record reveals the following facts and procedural history. Brockway Ferry Road is a highway[5] located **620 near the shore of the Connecticut River in the town. It extends in a southwest direction from Joshuatown Road toward its terminus near the shore of the Connecticut River, where it historically had provided access to a ferry that had operated from 1725 until 1884. The highway's western end is not improved and is partially encumbered by vegetation and other obstacles. Portions of that area run below the high water mark and are intermittently submerged. "The plaintiff owns real property, improved with a single family residence, on [the highway]. In 2006, several other proprietors of real property abutting [the highway] filed a petition, pursuant to ... § 13a-39, requesting that the board define the boundaries of [the highway], particularly at its western end, in the area of the plaintiff's property.[6] The board considered documentary and testimonial evidence and held hearings related to the petition. In October, 2006, the board published notice of its memorandum of decision in which it made a determination of the boundary and terminus of [the highway] at its western end as it runs along and into the Connecticut River. Essentially, the board concluded that [the highway] extended through and across the plaintiff's property, past the then existing western terminus of the highway."[7] (Footnote **621 added; internal *536 quotation marks omitted.) Id., at 612, 72 A.3d 394. The board's decision is depicted on a map dated June 29, 2006 (2006 map).[8]
"Thereafter, the plaintiff brought an administrative appeal, pursuant to ... § 13a-40, in the Superior Court. The plaintiff asserted that the board's decision introduced a public highway through and across her property, lessened the value of her property and negatively affected her use and enjoyment of her property. The plaintiff raised several claims related to the board's jurisdiction. Additionally, the plaintiff claimed that the board had acted illegally, arbitrarily and in abuse of its discretion. The gist of the complaint was that, rather than defining the width of an existing public highway, the board extended the length of [the] highway at its western terminus.
"In June, 2007, the plaintiff moved for summary judgment. The defendants opposed the motion arguing, in part, that the plaintiff was not entitled to move for summary judgment in an administrative appeal. In its May 20, 2008 memorandum of decision, [the court, **622 Abrams, J. ] granted the plaintiff's motion for summary judgment. The court concluded that it was entitled to consider the appeal in a trial de novo and, therefore, that the motion for summary judgment procedurally was appropriate. Thereafter, the court concluded that the plaintiff was entitled to judgment, as a matter of law, because the board exceeded the scope of its statutory authority by determining the length of [the highway] rather than its width." (Internal quotation marks omitted.) Id., at 612-13, 72 A.3d 394. The Appellate Court affirmed the judgment of the trial court. See Marchesi v. Board of Selectmen , 131 Conn. App. 24, 26, 28 A.3d 994 (2011). We then granted the defendants' petition for certification to appeal. See Marchesi v. Board of Selectmen , supra, 309 Conn. at 611 n.4, 72 A.3d 394.
On appeal, we concluded that the Appellate Court had properly determined that "parties appealing pursuant to § 13a-40 are entitled to a trial de novo ...." Id., at 611, 72 A.3d 394 ; see also id., at 617-19, 72 A.3d 394 (concluding that § 13a-40 appeal is trial de novo based on broad statutory language of § 13a-40 compared to other administrative appeal statutes, and lack of "procedural safeguards" in § 13a-39 proceeding before board). We disagreed, however, with the "Appellate Court's conclusion that § 13a-39 authorizes the selectmen of a town to determine the width of the existing highway, but not its length." Id., at 611, 72 A.3d 394 ; see also id., at 621-25, 72 A.3d 394 (relying on definitions of "lines" and "boundaries," along with prior interpretations of § 13a-39, to conclude that board's authority was not limited to highway's width). Accordingly, we reversed the judgment of the Appellate Court and remanded the case to that court with direction to remand the case to the trial court "for further proceedings to determine the width and length of the existing highway." Id., at 611-12, 72 A.3d 394.
**623 On remand, the trial court, Hon. Joseph Q. Koletsky , judge trial referee,[9] conducted *537 a three day court trial. At that trial, the court received numerous exhibits, including a variety of surveys and historical maps, and heard expert testimony from two surveyors, Richard Strouse and Gerald Stefon, whom the board had retained in connection with the proceedings under § 13a-39 to conduct historical research and survey the lines and bounds of the westerly end of the highway. The court also heard testimony from several adjoining proprietors; see footnote 3 of this opinion; including Robert H. Sutton, Eleanor B. Sutton, Leslie V. Shaffer, Richard W. Sutton, and Curtis D. Deane, about the public's use of the westerly end of the highway for access to the river for recreational purposes such as dog walking, swimming, and boat launching. Parker Lord, the previous owner of the plaintiff's property,[10] testified about his understanding of the highway's boundaries vis-à-vis the plaintiff's property, along with the public's use of the highway for river access.
At the close of the evidence, the plaintiff moved to dismiss the trial de novo proceeding on the ground that the case had effectively been prosecuted by the board and the town-which § 13a-39 required to act as adjudicators rather than advocates-rather than by one of the adjoining proprietors, who would be the real party in interest under §§ 13a-39 and 13a-40. The trial court denied the motion, concluding that it had subject matter jurisdiction based on remand from this court and the fact that the parties had previously agreed that the defendants would assume the burden of proof at the trial de novo. The trial court further emphasized that, in deciding this case, it did not have jurisdiction to **624 determine the legal status of the highway, such as whether it had been abandoned through nonuse or otherwise discontinued, and that its sole charge was to determine the bounds of the highway. After hearing argument about that evidence, the court rendered judgment dismissing the plaintiff's administrative appeal and "confirming" the board's finding with respect to the "lost or uncertain bounds" of the highway's western end. See appendix to and footnote 7 of this opinion. This appeal followed.
On appeal, the plaintiff (1) raises a plethora of challenges to the subject matter jurisdiction of the board and the trial court, and (2) contends that the trial court's determination of the highway's width was clearly erroneous. We address each of these claims in turn, setting forth additional facts and procedural history as appropriate.
I
We begin with the plaintiff's claims that the board lacked subject matter jurisdiction to define the boundaries of the highway under § 13a-39, which, in turn, deprived the trial court of jurisdiction to do so under § 13a-40, because (1) a court of competent jurisdiction had not first resolved a condition precedent, namely, the question of whether a public highway continued to exist in the disputed area, and (2) the filing and prosecution of the underlying petition to the board under § 13a-39 were fatally defective.
A
The plaintiff's first claim is that the board and the trial court lacked subject matter jurisdiction under §§ 13a-39 and 13a-40, respectively, to define the highway's boundaries because a court of competent jurisdiction had not first resolved the threshold question of whether a public highway continued to exist in the disputed **625 area and, more specifically, whether *538 that portion of the highway had been abandoned by nonuse. Relying on Hamann v. Newtown , 14 Conn. App. 521, 541 A.2d 899 (1988), Montanaro v. Aspetuck Land Trust, Inc. , 137 Conn. App. 1, 48 A.3d 107, cert. denied, 307 Conn. 932, 56 A.3d 715 (2012), and Nicholas v. East Hampton , Superior Court, Judicial District of Middlesex, Docket No. CV-04-0103439-S (November 14, 2005) (40 Conn. L. Rptr. 453), the plaintiff contends that a judicial determination, through either a declaratory judgment or quiet title action, regarding the legal status of the area in question as a public highway is a condition precedent to the maintenance of a definitional proceeding under § 13a-39. Accordingly, the plaintiff argues that the § 13a-39 proceeding in the present case was "premature" given her claim that, "if a public highway ever existed [in the disputed area] it had been abandoned."[11]
In response, the defendants argue that a judicial determination of the highway's public status is not a condition precedent to § 13a-39 proceedings. Although they agree that, under Hamann v. Newtown , supra, 14 Conn. App. 521, 541 A.2d 899, a board may not use definitional proceedings under § 13a-39 to determine the legal status of a highway, they nevertheless contend that status determination is not a condition precedent to the definitional proceeding.[12] We agree with the defendants and **626 conclude that a judicial determination of the highway's public status, including the question of whether it had been abandoned, is not a jurisdictional condition precedent to a proceeding under § 13a-39.
The record reveals the following additional relevant facts and procedural history. In the complaint initiating her appeal pursuant to § 13a-40, the plaintiff claimed, inter alia, that the board lacked jurisdiction under § 13a-39 to do the following: (1) "define the ... lines for [the highway] through and across [her] property due to the fact that [the highway] does not extend through and across [her] property and no portion of [her] property is a highway as defined in ... the General Statutes"; and (2) "make a decision defining the bounds for [the highway] through and across [her] property due to the fact that, in the public hearing held before [the board], the plaintiff ... placed in issue (i) whether [the highway] ever extended through and across [her] property and (ii) in the event that [the highway] ever did extend through and across [her] property, whether ... it had been abandoned by a long period of [nonuse]." The plaintiff also claimed that "[t]he resolution of ... the status of [the area in dispute] as a municipal highway is a condition precedent to a definition of highway lines pursuant to [§] 13a-39, and is beyond the jurisdiction of the [board]."[13]
**627 *539 In arguments before the trial court concerning the legal status of the highway, counsel for the plaintiff stated that he had "a difficult time finding the line between abandonment and its present status because if it's abandoned then it has no status." In response, counsel for the defendants contended that, "if the road had been abandoned, the [board] couldn't have set the boundaries" but nevertheless disagreed with the trial court's suggestion that setting the boundaries required, "ipso facto," a "finding that the road has not been abandoned." Instead, counsel for the defendants emphasized that the issue of abandonment was not before the court in the proceeding pursuant to § 13a-40, stated that a decision to set the boundaries would not constitute a finding that the highway had not been abandoned, and agreed that the issue of abandonment could be litigated in the future, claiming that the present case "is not an abandonment case. Abandonment is [addressed by a] declaratory judgment or quiet title [claim]." Subsequently, the trial court ruled on the merits of the present case and confirmed the finding of the board.
Whether a determination of a roadway's legal status is a condition precedent to a boundaries definition proceeding under § 13a-39"presents a question of statutory construction over which we exercise plenary review.... When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature.... In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply.... In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable **628 results, extratextual evidence of the meaning of the statute shall not be considered.... When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter .... The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citation omitted; footnote omitted; internal quotation marks omitted.) Tomick v. United Parcel Service, Inc. , 324 Conn. 470, 477-78, 153 A.3d 615 (2016). Previous case law interpreting the statute remains instructive, because "we do not write on a clean slate when this court previously has interpreted a statute ...." (Citation omitted; internal quotation marks omitted.) Gilmore v. Pawn King, Inc. , 313 Conn. 535, 542, 98 A.3d 808 (2014).
Thus, we begin with a review of Hamann v. Newtown , supra, 14 Conn. App. 521, 541 A.2d 899, and its progeny. Specifically, we begin by examining the plaintiff's contention that these cases require a judicial determination of the highway's public status as a jurisdictional condition precedent *540 to proceedings under § 13a-39. In Hamann , the Appellate Court held that a board was not "empowered to make a determination as to the status of a road coincident to its authority [under § 13a-39 ] to determine the boundaries of a road that have become lost or uncertain." Id., at 525, 541 A.2d 899 ; see id., at 524-25, 541 A.2d 899 (holding that acceptance of highway under General Statutes § 13a-48 was "exercise of legislative power" that could not be delegated to selectmen by town's legislative council and town meeting). In so concluding, the Appellate Court stated that " § 13a-39 sets forth a procedure for defining the boundaries of a highway which have become lost or uncertain. **629 Appeal of St. John's Church , 83 Conn. 101, 106, 75 A. 88 (1910). After hearing all parties interested, the town selectmen are required to reach a decision defining the lines and bounds of the highway. See Hartford Trust Co. v. West Hartford , 84 Conn. 646, [651], 81 A. 244 (1911). 'A statutory proceeding for the survey and platting of an existing road does not operate to establish the road. Its purpose is merely to ascertain the courses and distances of one claimed already to be established. It estops the public from claiming that the road runs on a line different from that of the survey.' 39 Am. Jur. 2d, Highways, Streets and Bridges § 55. Recourse to § 13a-39 presupposes a prior determination that the road in question has been deemed a public highway. See id. The board is without authority under that section to determine the legal status of a road." (Emphasis added; footnote omitted.) Hamann v. Newtown , supra, at 524, 541 A.2d 899.
Subsequently, in Montanaro v. Aspetuck Land Trust, Inc. , supra, 137 Conn. App. at 22, 48 A.3d 107, the Appellate Court followed Hamann in rejecting a claim that "the court lacked subject matter jurisdiction to determine the location of the highway because § 13a-39 vests primary jurisdiction in the town selectmen to make that determination." In that case, a declaratory judgment action, the trial court determined that a particular road had been accepted by the town as a public highway and then set the highway's boundaries. Id., at 22-23, 48 A.3d 107. On appeal, the Appellate Court held that § 13a-39 did not "require the plaintiffs to exhaust their administrative remedies before seeking a determination of the legal status of the highway." Id., at 23, 48 A.3d 107. The Appellate Court emphasized that recourse to § 13a-39 was unavailable because the parties had "sought a determination of the legal status of the road" and that § 13a-39 applies only when "the road in question already has been established as a public highway ...." (Emphasis added.) Id., at 24, 48 A.3d 107.
**630 As the parties' arguments in the present case demonstrate, Hamann may be read to have a "chicken or the egg" effect, particularly in cases in which a dispute about a highway's boundaries encompasses disagreement about whether that highway exists at all in the disputed location.[14] Nevertheless, we disagree with the plaintiff's argument that Hamann holds that a judicial determination of the highway's public status was a condition precedent to the board's exercise of its jurisdiction under § 13a-39 to determine *541 the boundaries of the highway.[15] We observe that the text of § 13a-39 does not expressly require such a finding; see footnote 4 of this opinion; and that adding such language where none exists would violate a cardinal rule of statutory construction. See State v. George J. , 280 Conn. 551, 570, 910 A.2d 931 (2006) ("As a general matter, this court does not read language into a statute.... [W]e are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained." [Citation omitted; internal quotation marks **631 omitted.] ), cert. denied, 549 U.S. 1326, 127 S.Ct. 1919, 167 L.Ed.2d 573 (2007).
We acknowledge, however, that the legal status of the roadway in question might well surface as an issue in § 13a-39 proceedings before a board, particularly in cases in which the road is virtually impassable. On this point, we agree with Judge Silbert's view that Hamann "is merely pointing out the obvious: that [a board of selectmen] cannot use the authority granted to it under § 13a-39 to determine the boundaries of something which is not actually a highway, and that [a board of selectmen] is also not empowered to use § 13a-39 as the vehicle for establishing the status of [a highway]." Nicholas v. East Hampton , supra, 40 Conn. L. Rptr. at 455. Nevertheless, if the matter of "whether the roads in question are indeed highways" is raised before a board, including the matter of abandonment, that body is permitted to "determine whether [it has] the authority to honor the plaintiffs' request for a § 13a-39 proceeding. They [would ] do so not pursuant to § 13a-39, but rather preliminary to any proceeding under that section. "[16] (Emphasis added.) Id. This is consistent with the well established principle of administrative law that an administrative body always has jurisdiction to determine its own jurisdiction to act in a given case. See, e.g., Cannata v. Dept. of Environmental Protection , 215 Conn. 616, 623, 577 A.2d 1017 (1990). Thus, as the **632 trial court pointed out, the plaintiff's remedy is to challenge the legal status of the roadway vis-à-vis abandonment through a declaratory judgment or quiet title action.[17] *542 Moreover, requiring a judicial finding as a condition precedent to the exercise of the board's jurisdiction in all cases would make little procedural sense, insofar as it would require at least some additional proceedings at greater cost to the adjoining proprietors and the municipality, even in cases in which the public status of the roadway is undisputed. At best, such a requirement would elevate form over substance, and this "court repeatedly has eschewed applying the law in such a hypertechnical manner so as to elevate form over substance." Lostritto v. Community Action Agency of New Haven, Inc. , 269 Conn. 10, 34, 848 A.2d 418 (2004) ; see also Quarry Knoll II Corp. v. Planning & Zoning Commission , 256 Conn. 674, 729-30, 780 A.2d 1 (2001) (requiring planning and zoning commission to state expressly that its reasons for rejecting applications clearly outweighed need for affordable housing in order to satisfy public interests standard of General Statutes [Rev. to 1997] § 8-30g [c] [1] [C] would "exalt form over substance"). Accordingly, we conclude that the trial court properly determined that the board had jurisdiction to define the highway's boundaries under § 13a-39 notwithstanding the absence of a prior judicial determination regarding the highway's legal status.
B
We next address the plaintiff's contention that the proceedings before the board failed to comply with **633 § 13a-39 in a manner that rendered the proceedings jurisdictionally defective, which, in turn, divested the trial court of subject matter jurisdiction under § 13a-40. To this end, the plaintiff cites Hartford Trust Co. v. West Hartford , supra, 84 Conn. 646, 81 A. 244, which interpreted the predecessor statute to § 13a-39, for the proposition that "[s]trict compliance with each of the enumerated steps of the statute was the condition of the validity of the entire proceeding. Failure to comply with any of the required steps would constitute a jurisdictional defect." Id., at 650, 81 A. 244 ; see id., at 652, 81 A. 244 ("the decision as to these plaintiffs was a nullity, for, without compliance with the statutory steps, the selectmen were without jurisdiction to render it"). We address each of the plaintiff's claimed defects in turn.
1
We first address the plaintiff's claim that the board committed various mistakes during the § 13a-39 proceeding that deprived it of jurisdiction, rendering the underlying petition a nullity under Hartford Trust Co. v. West Hartford , supra, 84 Conn. 646, 81 A. 244, namely, (1) causing the map of the highway to be made nearly five years prior to receiving the petition, rather than upon the petition of the adjoining proprietors, and (2) allowing the adjoining proprietors to file a petition that does not state "the bounds which they claimed as constituting the western end of [the highway]."[18] In response, the defendants contend that the substance of the petition and a survey map ordered by the board in 2001, and **634 created in 2002 *543 (2002 map), comply with § 13a-39. The defendants also rely on Appeal of St. John's Church , supra, 83 Conn. 101, 75 A. 88, and argue that any error in the conduct of the proceedings before the board was, in essence, cured by the subsequent trial de novo. We agree with the defendants and conclude that the errors claimed by the plaintiff were not jurisdictional because they did not implicate notice to the public, thus allowing any defect in the § 13a-39 proceedings before the board to be cured by the trial de novo under § 13a-40.[19]
We begin with a brief review of Hartford Trust Co. , which involved the statutory predecessor to § 13a-39. The preliminary statement of facts and procedural history in that case indicates that the plaintiffs, who owned land on the south side of Farmington Avenue in West Hartford, brought an action to enjoin West Hartford from taking a strip of their land for highway use. Hartford Trust Co. v. West Hartford , supra, 84 Conn. at 648, 81 A. 244. Another proprietor of land adjoining Farmington Avenue applied, in writing, to West Hartford's Board of Selectmen, seeking to establish the "bounds of [Farmington Avenue], which had become lost and uncertain." Id. After receiving the petition, the selectmen did not prepare a map, but utilized an existing map that "did not show the fences and bounds as claimed by adjoining proprietors," and adopted the "lines ... on the map" that "coincided with the lines of the highway as originally laid down, but there was nothing on the map to indicate this. In fact, the true south line of the avenue **635 at this point runs about two and [one-half] feet north of the south line indicated on the map." Id., at 648-49, 81 A. 244. West Hartford published notice of the hearing on the petition and the ultimate decision, but did not send any notice of the hearing or decision by mail to the plaintiffs. Id., at 649, 81 A. 244. The plaintiffs did not learn of those proceedings until nine years later when West Hartford published plans to widen and lower the grade of Farmington Avenue in front of their property in accordance with the map adopted at the hearing; those plans would "disfigure and render unsightly and inaccessible" the plaintiffs' property. Id., at 649-50, 81 A. 244. The court's decision in that case, citing Keifer v. Bridgeport , 68 Conn. 401, 405-12, 36 A. 801 (1896), ultimately held that "[s]trict compliance with each of the enumerated steps of the statute was the condition of the validity of the entire proceeding. Failure to comply with any of the required steps would constitute a jurisdictional defect." Hartford Trust Co. v. West Hartford , supra, at 650, 81 A. 244. Relying on the lack of statutorily required notice to the plaintiffs, the court concluded that the selectmen's "decision as to these plaintiffs was a nullity, for, without compliance with the statutory steps, the selectmen were without jurisdiction to render it ...." Id., at 652, 81 A. 244. The court emphasized that the statute's "obvious purpose ... was to afford proprietors the opportunity to see, from an inspection of the map, the relation the bounds claimed by the adjoining proprietors bore to the actual fences and bounds and the lines of the highway as originally out. With this knowledge the proprietors could protect their interests by making a suitable presentation *544 of their claims to the selectmen, and by duly taking an appeal from their decision." Id., at 651, 81 A. 244.
We disagree with the plaintiff's argument that Hartford Trust Co. stands for the proposition that any defect in the proceedings before the board under § 13a-39 renders its decision a nullity. First, that proposition is **636 inconsistent with this court's decision in Appeal of St. John's Church , which, in rejecting an aggrieved landowner's claim that the proceedings before the "selectmen should be governed by the precise rules regulating trials in civil cases," held that procedural errors before the board would not affect "the jurisdiction of the Superior Court to deal with the appeal, and render such judgment as it might deem proper .... This it has done, and if its own procedure was correct, it is of no consequence whether that pursued by the selectmen, in the particulars complained of, was correct or not." Appeal of St. John's Church , supra, 83 Conn. at 106-107, 75 A. 88 ; accord Marchesi v. Board of Selectmen , supra, 309 Conn. at 619, 72 A.3d 394 (concluding that § 13a-40 requires trial de novo rather than more deferential administrative appeal because "the procedure provided for in § 13a-39 lacks any requirements for the conduct of the hearing before the board," including "procedural safeguards" such as cross-examination).
Second, the plaintiff's broad reliance on Hartford Trust Co. is wholly inconsistent with subsequent cases from this court treating that decision and Keifer v. Bridgeport , supra, 68 Conn. at 405, 36 A. 801, on which this court relied, as cases emphasizing the provision of statutorily required notice and the opportunity to be heard as essential to the jurisdiction of the administrative body, because it goes to the essence of the objective that the body seeks to accomplish.[20] See Koepke v. Zoning Board of Appeals , 223 Conn. 171, 176-77, 610 A.2d 1301 (1992) ("Because the notice of a public hearing is designed to safeguard the public's opportunity to participate, the plaintiff's voluntary participation in the hearing **637 held by the board neither cured the jurisdictional defect ... nor estopped him from raising it after the adverse board decision.... Without subject matter jurisdiction, the board could not legally revoke the plaintiff's permit because the board's public hearing and the decision predicated thereon are void." [Citations omitted.] ); Sheehan v. Altschuler , 148 Conn. 517, 523-24, 172 A.2d 897 (1961) (invalidating taking pursuant to redevelopment plan, which was void because redevelopment agency did not provide notice or conduct required public hearing prior to adopting plan, and plan was not submitted to planning commission as required by statute); Hutchison v. Board of Zoning Appeals , 138 Conn. 247, 251, 83 A.2d 201 (1951) ("No notice was given and no hearing was had ... as to a change from a residence to a business zone. The only notice and hearing relat[ed] to a petition for a change to a light industrial zone. Therefore, the action by the planning board in purporting to change the zone boundaries so as to include the area in a business instead of a residence zone was a nullity.").
We now turn to the plaintiff's individual challenges to the board's jurisdiction. First, we conclude that the petition by the adjoining proprietors complied with § 13a-39 for purposes of properly invoking the board's jurisdiction. As the defendants *545 point out, § 13a-39 does not prescribe any particular form or content for the petition, other than to require that it be in writing. See footnote 4 of this opinion. We conclude that the petition in the present case adequately invokes the jurisdiction of the board by "formally request[ing] that [it] take the steps necessary to define the bounds of [the highway] and such other steps deemed necessary to remove any and all uncertainties regarding the road's location as required by [§] 13a-39," and "further requesting that detailed attention be given to the western end of our **638 road as this is the portion of the highway that has been the subject of much dispute for the past several years."
Second, with respect to the plaintiff's attack on the board's use of the 2002 map, which Strouse prepared prior to the filing of the § 13a-39 petition, the record reveals that, in 2001, the board ordered a map and survey from Strouse, a surveyor and engineer with more than forty years of experience, in response to complaints from the adjoining proprietors with respect to their dispute with the plaintiff. See footnote 6 of this opinion. Utilizing the 2002 map to explain his survey, Strouse then testified at the 2006 hearing before the board after the filing of the petition. Subsequently, Strouse prepared the 2006 map, which depicts the changes to the 2002 map required by the board's decision. See appendix to and footnote 7 of this opinion.
In present case, there is no claim that the board's use of the 2002 map, which was prepared by Strouse prior to the petition and hearing, prejudiced the plaintiff, insofar as, at the hearing, she had the opportunity to participate and was aware of the claims made by the adjoining proprietors and the lines as proposed by the board. Cf. Hartford Trust Co. v. West Hartford , supra, 84 Conn. at 650-51, 81 A. 244 (selectmen lacked subject matter jurisdiction because plaintiffs did not have required notice and did not have opportunity to raise claims with respect to propriety of map). Thus, we conclude that any procedural irregularities before the board were not so significant as to deprive it of jurisdiction and, under Appeal of St. John's Church , supra, 83 Conn. at 106-107, 75 A. 88, were effectively cured by the subsequent trial de novo before the Superior Court pursuant to § 13a-40.
2
We next turn to the plaintiff's claim that the underlying § 13a-39 petition was jurisdictionally defective because neither she nor her western neighbor, James **639 Behrendt,[21] ever signed that petition. See appendix to and footnote 3 of this opinion. The plaintiff emphasizes that, without those signatures, the petition was defective because the map used by the board did not show "the fences and bounds as actually existing, and the bounds as claimed by adjoining proprietors." General Statutes § 13a-39. The plaintiff then contends that this lack of participation in the petition process resulted in an unconstitutional taking of her property. In response, the defendants rely on Judge Lavine's concurring and dissenting opinion in Marchesi v. Board of Selectmen , supra, 131 Conn. App. at 41-42, 28 A.3d 994, to contend that the plaintiff's interpretation of § 13a-39 thwarts the purpose of the statute, which is to "provide an easy and convenient method of defining bounds of highways which shall have become lost or become uncertain." Appeal of St. John's Church , supra, 83 Conn. at 106, 75 A. 88. We agree with the defendants and conclude that the fact that the plaintiff and Behrendt did not sign the underlying § 13a-39 petition did not deprive the board of jurisdiction. *546 In considering whether a jurisdictionally valid petition under § 13a-39 requires the signatures of every adjoining proprietor, we begin our analysis with the statutory language. See General Statutes § 1-2z. An examination of the plain language of § 13a-39, as set forth in full in footnote 4 of this opinion, is fatal to the plaintiff's claim. Section 13a-39 permits "any of the proprietors of land adjoining such highway" to file the "written application" to the board. The statute does not require that all adjoining proprietors be signatories to the petition, but simply requires that the board, in addition to providing printed notice "in a daily paper having a general circulation in the town in which such highway is located ... shall send a written or printed notice to each known adjoining proprietor on such highway , setting forth the name or location of the highway, a **640 description of the portions to be reestablished, the place and time where such map may be seen, and the time, not less than two weeks from the date of the issue of such notice, when and place where all parties interested may be heard under oath in regard to such reestablishment." (Emphasis added.) Section 13a-39 also requires that the board publish notice of its decision and send that notice "to all known adjoining proprietors." (Emphasis added.)
It is well settled that " '[t]he word "any" has a diversity of meanings and may be employed to indicate "all" or "every" as well as "some" or "one." ... Its meaning in a given statute depends upon the context and subject matter of the statute. In New York, [New Haven & Hartford Railroad ] Co. v. Stevens , 81 Conn. 16, 21, 69 A. 1052 (1908), we held it to be too comprehensive a word to receive a narrow construction.' " (Citation omitted.) Stamford Ridgeway Associates v. Board of Representatives , 214 Conn. 407, 428, 572 A.2d 951 (1990) ; see also Connecticut Light & Power Co. v. Dept. of Public Utility Control , 266 Conn. 108, 118-19, 830 A.2d 1121 (2003) ; accord Black's Law Dictionary (6th Ed. 1990) (defining "[a]ny" as "[s]ome," "one out of many," "an indefinite number," or "[o]ne indiscriminately of whatever kind or quantity").
"Given our view of the [relevant] statutory scheme and the application of the principles to be employed to come to a common sense result, we construe 'any' to mean 'some' ...." Gentry v. Norwalk , 196 Conn. 596, 612, 494 A.2d 1206 (1985). Specifically, the plain language of § 13a-39 provides that any adjoining proprietor may initiate the § 13a-39 proceedings, with the rights of all or each of the adjoining known proprietors protected by the statute's notice provisions. "[T]he use of the different terms ... within the same statute suggests that the legislature acted with complete awareness of their different meanings ... and that it **641 intended the terms to have different meanings ...." (Internal quotation marks omitted.) Felician Sisters of St. Francis of Connecticut, Inc. v. Historic District Commission , 284 Conn. 838, 850, 937 A.2d 39 (2008).
Moreover, it "is axiomatic that we do not interpret a statute in a way that would so blatantly thwart its purpose." Location Realty, Inc. v. Colaccino , 287 Conn. 706, 727, 949 A.2d 1189 (2008). Requiring every adjoining proprietor to sign the petition could well frustrate the purpose of § 13a-39, as any one proprietor could deprive the board of jurisdiction by refusing to sign the petition, thus letting a land use dispute fester indefinitely. Judge Lavine comprehensively explains the impermissible absurdity of the interpretation of § 13a-39 suggested by the plaintiff: " 'The obvious purpose of [ § 13a-39 ] was to afford proprietors the opportunity to see, from an inspection of the map, the relation the bounds claimed by the adjoining proprietors bore to the actual fences and bounds and the lines of the highway as *547 originally laid out.' Hartford Trust Co. v. West Hartford , [supra, 84 Conn. at 651, 81 A. 244 ].
"This point addresses the allegation in the plaintiff's complaint that she did not petition the [board] to determine the bounds of [the highway] adjoining her property. In their petition to the [board], the defendant proprietors of adjoining land claimed that the boundaries of the western terminus of [the highway] had become lost or uncertain. If a highway is public, it is to be available to the public. No property owner should be permitted to ban the public, including neighbors, from traversing a public highway that crosses his or her land because he or she has not asked that the lost or uncertain boundaries be determined pursuant to § 13a-39." (Footnotes omitted.) Marchesi v. Board of Selectmen , supra, 131 Conn. App. at 41-42, 28 A.3d 994 (Lavine, J. , concurring and dissenting). Accordingly, we conclude that the board was not deprived of jurisdiction by virtue **642 of the fact that the plaintiff and Behrendt did not sign the underlying § 13a-39 petition.
II
Finally, we turn to the plaintiff's claim that the trial court's finding of the highway's boundaries is clearly erroneous. Specifically, the plaintiff claims that the defendants, who had assumed the burden of proof before the trial court, failed to prove by a preponderance of the evidence the width of the westerly end of the highway, which is depicted on the 2006 map as varying between twenty-one and twenty-seven feet wide. See appendix to and footnote 7 of this opinion. Specifically, the plaintiff contends that the evidence at trial, which included expert testimony by the two surveyors, Strouse and Stefon, along with testimony from several adjoining proprietors and Parker Lord, the former owner of the plaintiff's property, confirmed that there was no physical or historical evidence of the highway's width, rendering any finding as to width pure conjecture. In response, the defendants point to other documentary evidence, including an eighteenth century public record from the Colony of Connecticut, along with surveys, maps, town meeting minutes, photographs, and testimony from Lord and certain adjoining proprietors about recreational use of the highway's western end. The defendants also contend that the trial court reasonably could have credited the testimony of Stefon, a historian of Connecticut's roads, in finding that the highway had a width that varied between twenty-one and twenty-seven feet. We agree with the defendants and, accordingly, conclude that the trial court's finding as to the width of the highway was not clearly erroneous.
**643 As the parties agree, the trial court's determination of the roadway's boundaries in a de novo appeal under § 13a-40 constitutes a finding of fact. Accordingly, "our review is limited to deciding whether such findings were clearly erroneous." (Internal quotation marks omitted.) Stratford v. Jacobelli , 317 Conn. 863, 869, 120 A.3d 500 (2015). "Under this deferential standard, [w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported.... A finding of fact is clearly erroneous when there is no evidence in the record to support it ... or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed....
"Additionally, [i]t is well established that [i]n a case tried before a court, *548 the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony.... The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible.... On appeal, we do not retry the facts or pass on the credibility of witnesses." (Citation omitted; internal quotation marks omitted.) Nutmeg Housing Development Corp. v. Colchester , 324 Conn. 1, 10, 151 A.3d 358 (2016).
Having reviewed the record, we agree with the plaintiff's observation that there was no definitive physical or documentary evidence of the highway's width and that the two expert witnesses, Strouse and Stefon, offered contradictory testimony as to its width. Specifically, at the request of the board and Ralph Eno, the town's first selectman at that time, Strouse created the **644 2002 map. After the board's hearing pursuant to § 13a-39, Strouse created the 2006 map illustrating the board's findings. See appendix to and footnote 7 of this opinion. On the 2002 map, Strouse stated that there was "no known width" for the highway, and "depicted [it] as [one] rod (16.5 [feet] ) wide,"[22] with a label reading "approximate location of ancient highway right-of-way from Joshuatown Road to Brockway's ferry." Strouse testified at trial that the 2002 map did not show a width for the road and that a width of one rod was chosen "so we could identify [the area on the map] and [it] would stand out.... There's [was] nothing that would indicate the width of the road on any of the research or any of the maps we had." Strouse testified that his observations of the area did not lead him to a conclusion with respect to the roadway's width. Strouse also testified that the width as ultimately found by the board and depicted on the 2006 map was approximately five or six feet wider than that shown on the 2002 map.
Stefon testified that, in addition to being a licensed surveyor, he is a historian of road creation and location in Connecticut.[23] In 2005, William Koch, who had since become the town's first selectman, retained Stefon's firm to provide a research report[24] for the board regarding the western end of the highway. In doing his research, Stefon had the opportunity to examine the 2002 map, as well as other historical maps and materials that Strouse had considered, along with the history of **645 Brockway's ferry itself dating back to the eighteenth century. Stefon testified that, although he believed Strouse's map was "accurate," he nevertheless "question[ed] the width [Strouse] had ascribed to it and felt there was a chance that the road was wider than ... Strouse was showing." Although Stefon stated during cross-examination that there was no physical evidence of a roadbed "carved out for purposes of either vehicular or pedestrian traffic," he explained he had "grave reservation that [the highway] was only one rod wide [because] I have never encountered a public right-of-way that was only one rod wide so I doubted that width would be accurate." Stefon opined that, on the basis of his experience, the highway would "not be less *549 than [one] and [one-half rods] but more likely ... two rods" in width. Stefon explained that his "experience is that public roads were never created at one rod wide, whether it's [the highway] or any other road. Most counties were creating two rod roads; could have been wider, but at [the] very least what I have found is a road which would be [one] and [one-half rods] wide." Stefon acknowledged that there was no documentary or "physical evidence in the field ... that would allow us to define ... the width" of the highway's disputed portion, and stated that the basis of his testimony to the board that the road was two rods wide was because that was the "most common" width.[25] **646 Given the fact that the trial court's task in the present case was to determine boundaries that were, by definition, "lost or uncertain"; General Statutes § 13a-39 ; we conclude that its decision to confirm the board's finding that the highway varied between twenty-one and twenty-seven feet in width was supported by Stefon's expert testimony as to the most common widths of roadways, and hewed closely to Stefon's observed typical minimum size of one and one-half rods, or approximately twenty-five feet. See footnote 22 of this opinion. Particularly in the absence of any direct historical or physical evidence to the contrary, a holding deeming the trial court's conclusion-otherwise squarely supported by expert testimony presented to it as the sole arbiter of evidence-improperly speculative would tie the hands of future fact finders in cases in which the boundaries of a highway are irretrievably lost. Such a holding would undermine the purpose of § 13a-39 entirely. Accordingly, we conclude that the trial court's finding as to the width of the highway was not clearly erroneous.
The judgment is affirmed.
In this opinion the other justices concurred.
APPENDIX
*550 --------

The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199(c) and Practice Book § 65-1.

General Statutes § 13a-40 provides: "Any person aggrieved by such decision may appeal to the superior court for the judicial district where such highway is situated within ten days after notice of such decision has been given, which appeal shall be in writing, containing a brief statement of the facts and reasons of appeal and a citation to such selectmen and all adjoining proprietors on such highway to appear before said court, and said court, or any judge thereof, may direct the time of appearance and the manner of service. Said court may review the doings of such selectmen, examine the questions in issue by itself or by a committee, confirm, change or set aside the doings of such selectmen, and make such orders in the premises, including orders as to costs, as it finds to be equitable. The clerk of said court shall cause a certified copy of the final decree of said court to be recorded in the records of the town in which such highway is located, and, if such decree changes the bounds defined and established by the decision of such selectmen, the bounds defined and established by such decree shall be the bounds of such highway."

We note that the plaintiff has sought to name several adjoining proprietors as additional defendants at various points in the underlying proceeding. These proprietors include, among others: Lyme Land Conservation Trust, Inc.; Thomas E. Angers; James A. Behrendt; Brigit Ann Brodkin; Ambrose C. Clarke; Curtis D. Deane; Todd B. Ellison; David J. Frankel; Elizabeth C. Frankel; John J. Gorman III; Kenneth C. Hall; Amy Day Kahn; Carolyn D. Lieber; William A. Lieber; Leonard D. Lieberman; Paula A. Lieberman; Elizabeth Putnam; Russell K. Shaffer; Leslie V. Shaffer; Michael David Speirs; Eleanor B. Sutton; John David Sutton, Jr.; John David Sutton, Sr.; Richard W. Sutton; Robert H. Sutton; William C. Sutton, Jr.; and Jane Dunn Wamester. The individual interests of these adjoining proprietors are not, however, at issue in the present appeal. For the sake of simplicity, we refer to the board and the town collectively as the defendants. See Marchesi v. Board of Selectmen , supra, 309 Conn. at 610 n.1, 72 A.3d 394.

General Statutes § 13a-39 provides: "Whenever the boundaries of any highway have been lost or become uncertain, the selectmen of any town in which such highway is located, upon the written application of any of the proprietors of land adjoining such highway, may cause to be made a map of such highway, showing the fences and bounds as actually existing, and the bounds as claimed by adjoining proprietors, and shall also cause to be placed on such map such lines as in their judgment coincide with the lines of the highway as originally laid down. Such selectmen shall cause a notice to be printed for at least two days in a daily paper having a general circulation in the town in which such highway is located, and shall send a written or printed notice to each known adjoining proprietor on such highway, setting forth the name or location of the highway, a description of the portions to be reestablished, the place and time where such map may be seen, and the time, not less than two weeks from the date of the issue of such notice, when and place where all parties interested may be heard under oath in regard to such reestablishment. Such selectmen may adjourn such hearing from time to time and, upon reaching a decision, shall cause the same to be published as aforesaid and a notice of the same to be sent to all known adjoining proprietors. Such decision shall specifically define the line of such highway and the bounds thereof and shall be recorded in the records of the town in which such highway is located, and the lines and bounds so defined and established shall be the bounds of such highway unless changed by the Superior Court upon appeal from such decision of the selectmen."

For the purpose of consistency with this court's previous decision, we refer to Brockway Ferry Road hereinafter as the highway. See Marchesi v. Board of Selectmen , supra, 309 Conn. at 612 n.5, 72 A.3d 394.

The record indicates that these adjoining proprietors filed their petition in an attempt to resolve a dispute that arose after the plaintiff, who had purchased her property in 1998, sought to keep people from using the western end of the highway to access the river for recreational purposes.

Schedule A to the board's decision incorporates, by reference, a map dated June 29, 2006. See appendix to and footnote 8 of this opinion. Schedule A then continues to describe the boundaries of the highway as follows: "Beginning at a point on the northerly side of Brockway Ferry Road, which point marks the 'Limit of Improved Roadway from Joshuatown Road to the End of Bituminous Pavement,' as shown on said map; thence running ... [west for] 34.34 feet along a wet area with scrub vegetation to a point; thence [west for] 32.65 feet along the wet area with scrub vegetation to a drill hole found in a stone wall as shown on said [map]; thence [west for] 62.13 feet along the stone wall to a point; thence [west for] 24.33 feet along said stone wall to a point; thence [west for] 79.76 feet by the stone wall and across a gravel drive to a point in another stone wall ... as shown on said [map]; thence [west for] 46.45 feet along said stone wall ... to a point; thence [west for] 47.32 feet along said stone wall to a point; thence [west for] 47.82 feet along said stone wall to a point; thence [west for] 37.03 feet along said stone wall to a point at the top of steps as shown on said [map]; thence [west for] 19.92 feet along the top of steps and along the stone wall to a point at the corner of the stone wall; thence turning and running [south for] 21.42 feet along the top of a rock shore protection to a point at a 10 [inch] triple poplar as shown on said [map] ... thence turning and running ... [east for] 199.88 feet along a stone breakwater in the waters of the Connecticut River ... as shown on said [map]; thence [east for] 164.37 feet ... by the corner of a stone wall, across a private boat launch in the waters of the Connecticut River, across a rock shore protection, thence by a 10 [inch] poplar and a sign post to an iron pipe found (bent) ... as shown on said [map] ... thence [east for] 68.92 feet by a 14 [inch] poplar and along a rail fence ... as shown on said [map]; thence turning and running [north for] 26.86 feet ... to the point and place of beginning."

For ease of reference, a portion of this map has been reproduced as an appendix to this opinion.

Unless otherwise noted, all references hereinafter to the trial court are to Judge Koletsky.

We note that Lord also serves the town as a selectman, but recused himself from participation in the underlying proceedings before the board.

The plaintiff posits further that, "[w]ith the status of the area in question as a public highway in dispute, and with the issue of abandonment extant, the use of a § 13a-39 highway definitional proceeding effectively allows the [board] to appropriate land for highway purposes where no highway currently exists. This is a significant expansion of the power and authority of [the board] beyond that contemplated by the drafters of the remedial statute in question."

The defendants further posit that the plaintiff had "offered no evidence," such as a discontinuance under General Statutes § 13a-49 or abandonment under General Statutes § 47-31, as recorded on the town's land records, which date to 1665, "that the western end of [the highway] had been extinguished" because, "had she done so, adjoining proprietors would have no remedy under § 13a-39."

We note that the plaintiff further claimed that the board had "acted illegally, arbitrarily and in abuse of [its] discretion" because (1) it "proceeded to define the alleged ... lines of [the highway] in a [§] 13a-39 proceeding notwithstanding the fact that it knew, or in the exercise of reasonable care, should have known that it had no authority to pursue a [§] 13a-39 proceeding as the status of the westerly end of [the highway] as [the existence of] a highway had been placed in issue," and (2) "[b]y defining the ... lines of [the highway] through and across the plaintiff's property, the [board] made an implicit determination that (i) the original layout of [the highway] extended through and across the plaintiff's property and (ii) ... that portion of [the highway] had not been abandoned by an extensive period of [nonuse], both of which determinations are beyond the scope of the [board's] authority under [§] 13a-39 ...."

In terms of establishing the highway's public status, we note that "General Statutes § 13a-48 provides for the formal acceptance of a highway by a municipality. A road may also be expressly dedicated to a public use; A & H [Corp. ] v. Bridgeport , 180 Conn. 435, 439, 430 A.2d 25 (1980) ; or impliedly dedicated and accepted by the general public. Id. A public road may also be formally discontinued; General Statutes § 13a-49 ; or deemed abandoned due to nonuse by the public. Doolittle v. Preston , 5 Conn. App. 448, 451, 499 A.2d 1164 (1985)." (Footnote omitted.) Hamann v. Newtown , supra, 14 Conn. App. at 524-25, 541 A.2d 899.

We note that neither party questions the correctness of the Appellate Court's conclusion in Hamann v. Newtown , supra, 14 Conn. App. at 524, 541 A.2d 899, that, although "[r]ecourse to § 13a-39 presupposes a prior determination that the road in question has been deemed a public highway," the "board is without authority under [§ 13a-39 ] to determine the legal status of a road." Accordingly, our analysis of the plaintiff's jurisdictional claim starts from this point. We leave to another day whether considerations of judicial and administrative economy support a construction of § 13a-39 that affords a board, in connection with definitional proceedings under that statute, the authority to make a factual finding as to the legal status of a road, such as abandonment, subject to de novo judicial review under § 13a-40. See footnotes 16 and 17 of this opinion and accompanying text.

Were a board to decide not to honor the adjoining proprietors' request under § 13a-39 on the ground that the road in question was not a highway, the proprietors' remedy would be to seek a writ of mandamus, the issuance of which would require a factual finding that the area in question is, in fact, a highway as defined by General Statutes § 13a-1. See Nicholas v. East Hampton , supra, 40 Conn. L. Rptr. at 455 ; see also id., at 456 (denying request for writ of mandamus based on factual finding that area in question was private way, rather than highway); cf. State ex rel. Stankus v. Parker , 15 Conn. Supp. 404, 405 (1948) (abandonment of highway would be defense to writ of mandamus to require selectmen to comply with petition to define highway boundaries under statutory predecessor to § 13a-39 ).

As was discussed at oral argument before this court, had the plaintiff brought such an action during the pendency of the present case before the trial court, it could have been consolidated for purposes of case management, and decided with the present de novo appeal from the boundary determination pursuant to §§ 13a-39 and 13a-40. Cf. Montanaro v. Aspetuck Land Trust, Inc. , supra, 137 Conn. App. at 23-24, 48 A.3d 107.

We note that the plaintiff also objects to the board's use of the town attorney to "prosecute the case to support [its] findings in the administrative proceeding." Not surprisingly, the plaintiff cites no authority for the proposition that a municipal body is not entitled to the assistance of counsel in conducting administrative proceedings, such as those pursuant to § 13a-39. Insofar as the board and town were named as defendants in this case by the plaintiff, it is not clear how else the plaintiff expected the defendants to proceed once the case reached the Superior Court under § 13a-40.

To this end, the plaintiff further argues these defects, along with the associated trial de novo under § 13a-40, deprived her of the common-law right to fundamental fairness in administrative hearings. See, e.g., Grimes v. Conservation Commission , 243 Conn. 266, 273-74, 703 A.2d 101 (1997). We agree, however, with the defendants that the plaintiff failed to preserve this claim before the trial court, and we decline to review it for the first time on appeal under State v. Golding , 213 Conn. 233, 239-40, 567 A.2d 823 (1989), because it apparently concerns only a common-law right, rather than a claimed constitutional violation.

At most, Keifer v. Bridgeport , supra, 68 Conn. at 405, 36 A. 801, would stand for the proposition that only the most extreme departures from the governing statutes would be jurisdictional in nature. See Thomas Bennett Estate, Inc. v. New Haven , 117 Conn. 25, 34, 166 A. 680 (1933) (assessment would be void if "municipality had so far departed from the procedure established by the statute as to oust itself of jurisdiction").

We note that Behrendt has not filed an appearance in the present case.

"A rod is a unit of measurement equal to 16.5 feet." Thurlow v. Hulten , Superior Court, judicial district of Hartford, Complex Litigation Docket, Docket No. X04-CV-05-4059315-S, 2014 WL 6428413 (October 15, 2014) (adopted by Appellate Court and reprinted in Thurlow v. Hulten , 173 Conn. App. 694, 698, 164 A.3d 858 [2017] ).

Stefon testified that he has provided historical research on 300 to 400 occasions for municipalities, attorneys, and private individuals, with respect to the location of ancient roadbeds in Connecticut.

We note that Stefon's report to the board was marked for identification but not admitted into evidence.

During summations, counsel for the defendants discussed Stefon's testimony about his research, including the lack of any historical evidence, such as town meeting records, with respect to the highway's layout. The trial court asked counsel for the defendants whether he had a position as to the width of the road, given that "it's under water half the time anyway." Counsel for the defendants stated that he did not think the width of the road mattered, given the nature of the dispute before the court. Likewise, counsel for the plaintiff acknowledged the difficulty of finding the length and width of the road given the alterations to the river's shore by erosion since the end of ferry service in 1884, and argued during summation that the court "doesn't sit as some sort of historical tribunal. Its finding has to relate to the present. You're not being asked to determine something as it existed in 1784 or 1922. You're [being] asked to determine the bounds of a highway as of this day." Although the plaintiff's argument focused on the decades of nonuse of the highway, and its current lack of use, counsel for the plaintiff also asked, "how do you find based on the evidence how wide this thing is? How do you find based on the monuments in the field which are critical to where that roadway is? How do we find that roadway?" The court posited that the width, like that of an easement, could be "determined by historical uses." The plaintiff argued that, with respect to widths, "[a]t some point it becomes speculation, at some point, the court is required to speculate" given the lack of "complete monumentation," although she acknowledged that there was "ample evidence" as to length.